Charles W. MILLER, Petitioner,

v.

FEDERAL MINE SAFETY AND
HEALTH REVIEW COMMIS-
SION, Respondent.

No. 80–1536.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 3, 1982.

Decided Aug. 19, 1982.

John W. Huffman, Kimmel, Huffman, Prosser & Kimmer, Ltd., Carbondale, Ill., for petitioner.

Anthony J. Steinmeyer, Civ. Div., Dept. of Justice, Washington, D. C., for respondent.

Before PELL, BAUER and POSNER, Circuit Judges.

POSNER, Circuit Judge.

This appeal presents several questions regarding the meaning of 30 U.S.C. § 815(c)(1), the anti-retaliation section of the Federal Mine Safety and Health Act of 1977, 30 U.S.C. §§ 801 *et seq.* That section forbids the discharge of, or other retaliation directed against, a miner because he has complained to his employer or union about an alleged hazard or about a safety or health violation; or because he has instituted, or testified in, any proceeding under the Act; or because he has exercised, on behalf of himself or others, "any statutory right afforded by" the Act. The last of these three grounds was added in 1977, and the questions we have to decide are (1) whether one of these statutory rights is the right to stop work because of an unsafe or unhealthful condition, (2) whether the stoppage must be reasonable, as well as motivated by a genuine belief that it is necessary to protect safety or health, and (3) whether the requirement of reasonableness includes a requirement that the worker, where it is feasible for him to do so, promptly report the unsafe or unhealthful condition to his employer. The Federal Mine Safety and Health Review Commission, which administers the Act, has answered all three questions "yes," see *Dunmire v. Northern Coal Co.*, Docket Nos. West 80–313–D, 80–367–D, slip op. at 8 (Feb. 5, 1982), and we must decide whether its answers are correct.

Nowhere does the Act explicitly entitle a worker to stop work because conditions are unsafe or dangerous to health, so that on a literal reading of the Act the answer to the first question would have to be "no." However, in *Consolidation Coal Co. v. Marshall*, 663 F.2d 1211, 1216 (3d Cir. 1981), the Third Circuit, while expressly reserving the question, reviewed the legislative history of the 1977 amendments in a considered dictum and concluded that "the statutory scheme, in conjunction with the legislative history . . ., supports a right to refuse to work in the event that the miner possesses a reasonable, good faith belief that specific working conditions or practices threaten his safety or health." *Id.* at 1217 n. 6. We agree that there is such a right. The Senate Report states that "the Committee intends that the scope of the unprotected activities be broadly interpreted . . ., and intends it to include . . . the refusal to work in conditions which are believed to be unsafe or unhealthful . . . ." S.Rep.No. 181, 95th Cong., 1st Sess. 35 (1977), U.S. Code Cong. & Admin.News 1977, pp. 3401, 3435. In the absence of any contrary legislative history, so clear a statement in the principal committee report is powerful evidence of legislative purpose, which we are obliged to give effect to even if it is imperfectly expressed in the statutory language.

*Consolidation Coal* may seem to answer our second question as well, by its reference to "reasonable belief." But the court did not explain its use of the adjective; and anyway the issue here is not the reasonableness of the miner's belief in the hazard but the reasonableness of his stopping work without reporting the hazard to his employer promptly. Furthermore, the court's reference to reasonableness exists in some tension with the holding in a case from the District of Columbia Circuit interpreting the previous mine safety act, *Munsey v.*

*Federal Mine Safety & Health Review Comm'n*, 595 F.2d 735, 742–43 (D.C.Cir. 1978), that a complaint of an alleged hazard or a safety or health violation is within the scope of the anti-retaliation provisions of the act even if the complaint is frivolous. But the tension is less than at first appears. *Munsey* involved safety complaints rather than work stoppages. A complaint does not disrupt the operations of the mine, so even frivolous complaints impose few costs on the employer. But a work stoppage is invariably a source of significant cost. Thinking our way as best we can into the minds of the Senators and Representatives who voted for the 1977 amendments, we can imagine them wanting to allow miners to complain freely about the conditions of safety and health in the mine without having to worry about retaliation if the complaint was later determined to have been frivolous yet at the same time not wanting to render mine operators powerless to deal with miners who, simply by alleging a hazard to safety and health, claim a privilege to walk off the job without notice. We are unwilling to impress on a statute that does not explicitly entitle miners to stop work a construction that would make it impossible to maintain discipline in the mines.

██ The specific requirement of promptly reporting the hazard to the employer which the Commission has read into the Act is not only a natural corollary to the general requirement that the work stoppage be reasonable but also a device well suited to promoting the Act's fundamental objective of promoting mine safety and health. It gives the worker an incentive to bring a safety hazard to his employer's attention, for by doing so he gains the protection of the Act against retaliation (provided that his belief that there is a hazard is reasonable). The requirement also serves an evidentiary purpose: it helps the Commission distinguish between genuine and spurious invocations of the Act's protections. The worker who does not promptly report an alleged hazard to his employer is less likely to be sincere in his belief that there is a hazard than the worker who does. Only a monster would walk off the job without taking immediate steps to protect the workers who remained, if he genuinely believed that mine conditions were hazardous. Coal miners work in teams; the spirit of solidarity among them is strong; rarely would a worker who really believed that conditions were hazardous fail to inform his employer promptly of the hazard that he believed entitled him to stop work.

We may turn now to the particulars of the present case. Miller, the petitioner, was a section boss in a coal mine; and though technically he was a member of management, there is no doubt that he was within the class protected by section 815(c)(1). See 30 U.S.C. § 802(g). He was fired after a series of incidents only one of which he contends in this court did not provide a lawful basis for discharging him. He was ordered to start up a machine called a "longwall miner" but he did not do so—he says because he thought that in the condition the machine was in it would have been a violation of the Act to have tried to mine coal with it. He assigned his men to other work but took no steps to report to his superior his refusal to do the job that had been assigned to him, and it was not until three or four hours later that his superior, upon calling to find out how the work was progressing, discovered that Miller had balked.

The administrative law judge decided that Miller's discharge had not been in violation of section 815(c)(1), and the Commission declined to review the decision, which made it the final order of the Commission. Miller petitions this court under 30 U.S.C. § 816(a)(1) for review of the order. Neither the Commission nor the employer has favored us with a brief; we are touched by their faith in our ability to resist the blandishments of an unopposed advocate.

██ The administrative law judge's decision leaves something to be desired. It not only antedates the Commission's decisions that impose a duty in work-refusal cases to report the hazard promptly to the employer, but overlooks the (implicit) statutory right to refuse to work in the presence

of a safety or health hazard that was added by the 1977 amendments. Instead it states that the "pivotal question" was whether Miller's refusal to do his assigned work "constitutes a safety complaint for which he can claim protection under the Act." The decision goes on to find however that "it was incumbent upon [Miller] to register his complaint immediately, and tell his supervisor that he could not perform his assigned duties without further instructions on the operation of the machine. Instead of doing this, [Miller] simply disobeyed his supervisor's directions. That type of conduct is not protected under section [815(c)(1)]." The administrative law judge thus anticipated the duty of prompt reporting that the Commission has read into the Act and found that Miller had failed to comply with that duty and therefore was not protected from being dismissed for his refusal to do the assigned job. It is true that Miller's failure promptly to report the hazard did not endanger his fellow workers, because he assigned them other work; but while the danger to other workers which a failure to report a safety hazard promptly to the employer often creates is, as we said earlier, a reason in favor of the prompt-reporting requirement, it is not a precondition to imposing the requirement in a particular case. Moreover, if it is true that Miller's failure to report the hazard promptly did not endanger his fellow workers, it is equally true that his refusal to work was not necessary to protect them from the hazards he anticipated from using the longwall miner to mine coal in what he considered to be the machine's defective condition. All he was asked to do was start up the machine, and any danger would only have come later, when the machine, having been put in running order, was used to mine coal.

Since the administrative law judge's fact-findings, which are supported by substantial evidence, show that Miller was not entitled to any relief under the Commission's construction, which we consider correct, of section 815(c)(1), no purpose would be served by remanding the case for reconsideration in light of *Dunmire* and the other recent decisions in which the Commission put forth that construction for the first time. The decision in this case is therefore

Affirmed.