**In re Stephen Lawrence CAREY, Debtor.**

**Fritz W. TOBLER, III, Plaintiff,**

v.

**Stephen Lawrence CAREY, Defendant.**

Bankruptcy No. 3-83-00512.
Adv. No. 3-83-0569.

United States Bankruptcy Court,
E.D. Tennessee.

Dec. 16, 1983.

Bernstein, Susano, Stair & Cohen, Bernard E. Bernstein, Thomas N. McAdams, Knoxville, Tenn., for plaintiff.

Child, O'Connor & Petty, Robert M. Child, Knoxville, Tenn., for defendant.

---

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether a judgment against the debtor for the wrongful death of plaintiff's former spouse is nondischargeable pursuant to 11 U.S.C.A. § 523(a)(6) (1979). On March 30, 1983, Stephen Lawrence Carey filed a chapter 7 bankruptcy petition. Plaintiff, Fritz W. Tobler, III, is listed as an unsecured creditor in Schedule A–3 appended to the debtor's petition. On June 6, 1983, plaintiff commenced this adversary proceeding seeking to except his debt from discharge on the basis that the actions of the debtor causing the wrongful death of his former spouse were willful and malicious pursuant to § 523(a)(6) of the Bankruptcy Code. Trial of this adversary proceeding was held on November 9, 1983.

### Findings of Fact

1. The plaintiff is a creditor of the debtor and is the holder of a judgment entered against the debtor on January 22, 1980, in the First Circuit Court for Knox County, Tennessee; a copy of this judgment was filed as Exhibit 1 in these proceedings. The judgment was renewed on March 21, 1980.

2. The judgment was granted pursuant to a jury verdict, rendered at the conclusion of the trial on January 15, 1970, in an action brought for the wrongful death of Judy Carol Tobler, plaintiff's deceased wife, who died in an automobile accident caused by the debtor on or about August 24, 1968. In that accident, the plaintiff was driving his 1964 Ford automobile in a southerly direction on Ebenezer Road in Knox County, Tennessee. The plaintiff's deceased wife and his two children were passengers in his car.

3. At the same time, the debtor, approaching the plaintiff's vehicle, was driving his 1965 Buick in a northerly direction on Ebenezer Road.

4. The fatal accident occurred when the debtor, traveling at a high rate of speed, swerved onto the wrong side of the road, crashing head-on with plaintiff's automobile.

5. As a result of the collision, the plaintiff's wife sustained serious and grave injuries which caused her death.

6. At the time of the accident the debtor was quite intoxicated, having consumed beer throughout a period of four or more hours preceding the accident.

7. A report from the University of Tennessee Memorial Research Center and Hospital reflects that the defendant's alcohol blood content following the accident was 0.154%. Tenn.Code Ann. § 59–1033 (1968) created a presumption that a driver is intoxicated if his alcohol blood level is 0.15% or more. That statute has been subsequently amended so that at present the presumption arises if the alcohol blood content is 0.10% or more. Tenn.Code Ann. § 55–10–408(b) (1980).

8. The debtor's actions were in violation of the common law of the State of Tennessee and statutory provisions relating to the operation of motor vehicles.

9. In addition to the civil action brought by the plaintiff herein, a criminal action was instituted against the debtor by the State of Tennessee. During the course of the criminal proceeding the debtor entered a plea of guilty to involuntary manslaughter and was sentenced to serve a period of not less than one nor more than five years in the state penitentiary.

10. The civil case was tried on January 15, 1970, upon the pleadings, evidence introduced in open court, and stipulations of the parties, including the stipulation that the debtor had entered a plea of guilty to a charge of involuntary manslaughter. The debtor, although not present, was represented by counsel at the civil trial.

11. The plaintiff sought compensatory damages and punitive damages alleging that the debtor was guilty of willful and malicious conduct. The January 22, 1970, judgment recites that the jury specifically found "the defendant [debtor] guilty of gross, wilful and wanton negligence and assessed damages by reason thereof in the

total amount of $150,000.00, of which amount $100,000.00 was awarded for compensatory damages and $50,000.00 was awarded for punitive damages." (See Exhibit 1.)

12. The debtor was not acquainted with the plaintiff or any members of his family previous to the accident and contends he consequently could not have acted maliciously in connection with the accident resulting in the death of Judy Carol Tobler.

## Conclusions of Law

1. Section 523(a)(6) of Title 11 of the United States Code enacts in part:

   (a) A discharge under Section 727 ... of this title does not discharge an individual debtor from any debt—

   .     .     .     .     .

   (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;
   . . . .

2. The terms "willful" and "malicious" are not defined by the Bankruptcy Code. Hence, it is left to the court to determine the guidelines for application of the exception found in § 523(a)(6). *Forester v. Eastham*, Bankr.Ct.Dec. 1211, 1212 (Bkrtcy.E.D. Tenn.1975).

3. A leading case defining these terms is *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754, (1904). In *Tinker*, the Court concluded that a state court judgment against the bankrupt for damages arising from criminal conversation with the plaintiff's wife had been based upon a willful and malicious injury to the plaintiff's property rights and thus was nondischargeable in bankruptcy under § 17(a)(2) of the Bankruptcy Act of 1898. (The provision of § 17(a)(2) material herein, redesignated as § 17(a)(8) by the 1970 amendment of the former Act, has remained unchanged since 1898 and is likewise unchanged in the present Bankruptcy Code.) The issue in *Tinker* was not whether the bankrupt's conduct had been willful; the Court stated that because the act had been intentional and voluntary, the act was clearly "wilful"

for the purpose of § 17(a)(2). *Tinker*, 193 U.S. at 485, 24 S.Ct. at 508. The real issue in *Tinker* was whether the bankrupt's conduct had been "malicious" pursuant to § 17(a)(2). The opinion recites:

In order to come within that meaning as a judgment for a wilful and malicious injury to person or property, it is not necessary that the cause of action be based upon special malice . . . .

. . . .

In *United States v. Reed*, 86 Fed. 308, it was held that malice consisted in the wilful doing of an act which the person doing it knows is liable to injure another, regardless of the consequences; and a malignant spirit or a specific intention to hurt a particular person is not an essential element. Upon that principle, we think a wilful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously, so as to come within the exception.

It is urged that the malice referred to in the exception is malice towards the individual personally, such as is meant, for instance, in a statute for maliciously injuring or destroying property, or for malicious mischief, where mere intentional injury without special malice towards the individual has been held by some courts not to be sufficient. *Com. v. Williams*, 110 Mass. 401.

We are not inclined to place such a narrow construction upon the language of the exception. We do not think the language used was intended to limit the exception in any such way. It was an honest debtor, and not a malicious wrongdoer, that was to be discharged.

*Tinker v. Colwell*, 193 U.S. at 485, 487–88, 24 S.Ct. at 508, 509.

4. The continued applicability in Code § 523(a)(6) cases of the holding in *Tinker* has been questioned by some courts because of the legislative history of that section:

Under this paragraph, [6] "willful" means deliberate or intentional. To the extent

that *Tinker v. Colwell,* 193 U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902) [1904],[1] held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

H.R.Rep. No. 595, 1st Sess. 365, *reprinted in* 1978 U.S.Code Cong. & Admin.News, 5787, 5963, 6320–21.

The significance of this legislative history has, however, been questioned. In *Credithrift of America v. Auvenshine,* 9 B.R. 772 (Bkrtcy.W.D.Mich.1981), Judge Nims states:

> Legislative history is a helpful tool in determining the intent of the legislature where that intent is not clear. But, I fail to see how a statement in a report prepared for the assistance of Congress, usually by unidentified persons, can overrule decisions of the United States Supreme Court where almost the identical language was involved. In my opinion, *Tinker v. Colwell* . . . is still operative and controlling.

*Auvenshine* at 775.

*See also Brawner v. Askew,* 22 B.R. 641, 642 (Bkrtcy.M.D.Ga.1982); *Borg-Warner Acceptance Corp. v. Simmons,* 9 B.R. 62, 65 (Bkrtcy.S.D.Fla.1981).

5. A division of authority exists on the issue of the dischargeability of an indebtedness arising from an automobile accident caused by the debtor while intoxicated. *Marwell Trucking, Inc. v. Davis,* 26 B.R. 580 (Bkrtcy.D.R.I.1983) (judgment for property damage caused by intoxicated debtor driving at safe rate of speed dischargeable); *Clair v. Oakes,* 24 B.R. 766 (Bkrtcy.N.D. Ohio 1982) (conviction for vehicular homicide of intoxicated debtor, having alcohol blood content of 0.2485%, insufficient without further evidence to permit finding of willful and malicious injury to decedent); *Matter of Morgan,* 22 B.R. 38 (Bkrtcy.D. Neb.1982) (debt dischargeable because no evidence suggested drinking driver intended to injure victim); *Williams v. Bryson,* 3 B.R. 593 (Bkrtcy.N.D.Ill.1980) (debt dischargeable because reckless disregard does

not equate to willful and malicious conduct).

*Contra Long v. Greenwell,* 21 B.R. 419 (D.C.S.D.Ohio 1982); *Prosch v. Wooten,* 30 B.R. 357 (Bkrtcy.N.D.Ala.1983).

6. In *Long v. Greenwell,* 21 B.R. 419 (D.C.S.D.Ohio 1982) the district court quoted at length the bankruptcy court's analysis of Code § 523(a)(6), including the following paragraph:

> What is to be gleaned from this review [of the legislative history] is that Congress intended that it not be sufficient to classify an act as willful and malicious that it be one done for reckless disregard for consequences. An intentional act is required. It is not, however, necessary to find that personal ill will existed in order for there to be a finding of willful and malicious injury. *In re Obermeyer,* 12 B.R. 26 (B.J., [Bkrtcy.] Ohio, 1981). In the case before us now, we hold that the voluntary drinking by defendant constituted an intentional act sufficient to support the conclusion that the injury caused by defendant was willful and malicious. That is, while the legislature meant to circumscribe the scope of the *Tinker* case, its holding that "willful and malicious" under the statute is satisfied where there is an intentional injury remains valid. Defendant's intentional drinking unleashed the unbroken causative chain which led to the injury to plaintiff's vehicle. It will not avail defendant in his effort to avoid this result to argue that he did not know plaintiff prior to the accident and therefore the injury could not have been intentionally caused. One is responsible under the law for the natural outcome of his actions.

*Greenwell,* 21 B.R. at 421.

The district court concurred in this analysis and affirmed the bankruptcy court's holding that the injuries caused by the debtor driving while intoxicated were willful and malicious within the meaning of those terms in Code § 523(a)(6).

---

1. The year of decision was 1904, not 1902.

7. The *Greenwell* decision was followed in *Prosch v. Wooten,* 30 B.R. 357 (Bkrtcy.N. D.Ala.1983), wherein the court quoted recent remarks of Senator De Concini made on the Senate floor:

> Today there exists in the bankruptcy statute an unconscionable loophole which make it possible for drunk drivers or others who have acted with willful, wanton, or reckless conduct and who have injured, killed, or caused property damage to others to escape civil liability for their actions by having their judgment debt discharged in Federal bankruptcy court. This loophole affords opportunity for scandalous abuse.
>
> . . . .
>
> Bankruptcy was never meant to be a shield behind which drunk drivers, and others who have acted in a reckless manner, can absolve themselves of liability. The concept of the fresh start for a debtor must defer to the possibility of a fresh start of the innocent victim.
>
> . . . .
>
> The term reckless generally is understood to mean that the perpetrator of the injury knew of the risk and went ahead with his action anyway. He adverted to the harm. Surely, we do not want to insulate from liability people that conduct themselves in a willful, wanton, or reckless manner as these words are generally understood. It may even be questionable whether we want to discharge a negligent tortfeasor, but my amendment does not address that.

129 Cong.Rec. S 5326 (daily ed. Apr. 27, 1983) (statement of Sen. De Concini).

8. This court concurs in the *Greenwell* court's analysis of the legislative history of Code § 523(a)(6). Furthermore, the court refuses to believe that when Congress enacted 11 U.S.C.A. § 523(a)(6) (1979) it intended to allow the discharge of an indebtedness for wrongful death occurring as a proximate result of operation of a motor vehicle by a debtor on the wrong side of the road, at an unsafe speed, while intoxicated, who thereafter pleads guilty to a charge of involuntary manslaughter. Further, a state court jury found the defendant debtor guilty of "gross, wilful and wanton negligence" in the 1970 civil action.

9. The January 22, 1970, judgment and the evidence at trial support a finding of willful and malicious conduct on the debtor's part. Hence, the judgment indebtedness owing to plaintiff is nondischargeable. 11 U.S.C.A. § 523(a)(6) (1979).