JOHN R. GIBSON, Circuit Judge.
 

 The 1978 Bankruptcy Code, 11 U.S.C. § 523(a)(6)(1982), bars the discharge of debts arising from a “willful and malicious injury.” The issue before us is whether a judgment for personal injury damages resulting from the debtor’s operation of an automobile while under the influence of alcohol is a debt arising from a “willful and malicious injury” and, therefore, nondis-chargeable under the Code. We believe that the Congress enacting the Code intended to make nondischargeable only debts arising from intentionally inflicted injuries, and there is no evidence supporting the conclusion that the injuries inflicted in this case were intentional. We therefore affirm the judgment of the district court.
 
 [1]
 

 Cassidy, the creditor in this action, obtained a default judgment against Minihan in state court for damages he suffered in an automobile collision with Minihan. Min-ihan sought discharge of the debt in bankruptcy and Cassidy challenged its dis-chargeability in an adversary proceeding in United States Bankruptcy Court in the Western District of Missouri. The bankruptcy judge conducted a de novo hearing on the issue of whether Minihan had inflicted a “willful and malicious injury” and found the following facts: On October 25, 1979 Minihan visited with friends between the hours of 7:00 p.m. and midnight. During this period he consumed at least five twelve-ounce cans of beer. He headed home about midnight, travelling north on a highway in Missouri; Cassidy was travel-ling south on the same road. Minihan’s car crossed over to the southbound lane and struck Cassidy’s head-on.
 
 In re Minihan,
 
 
 *342
 
 No. 83-1153-C, slip op. at 2 (Bankr.W.D. Mo., Aug. 30, 1984). Cassidy suffered substantial personal injuries as a result of the collision.
 

 The police officer who arrived first at the accident scene stated that Minihan’s car and person carried a strong alcohol odor, but that he did not administer a breathalizer test at the scene. The bankruptcy court found that Minihan was legally drunk at the time of the accident.
 
 [2]
 
 There is a veer in the road at the accident site due to road construction, but the bankruptcy court determined that this was not a major factor in the accident.
 
 Id.
 
 at 3.
 

 Cassidy commenced a civil suit against Minihan in the Circuit Court of Jackson County, Missouri seeking actual and punitive damages for the injuries he suffered in the collision. For actual damages, he alleged that the collision was caused by Mini-han’s negligence; for punitive damages, he alleged that Minihan’s actions were either willful and malicious, or in conscious disregard of the rights of others. Minihan did not appear for trial and a default judgment was entered against him. The circuit court judge awarded Cassidy actual and punitive damages totaling $1,003,500. However, the judge did not specify in his order the theory on which punitive damage was assessed.
 

 The bankruptcy judge, based on his evaluation of the legislative history of the Code and decisions of other courts,
 
 [3]
 
 determined that “willful” means deliberate or intentional conduct, and that “malicious” incorporates “acting with knowing disregard of the rights of another.”
 
 In re Minihan,
 
 slip op. at 7, 8. The bankruptcy judge determined that Minihan acted intentionally by deliberately ingesting alcohol and that he then drove his car on public roads in knowing disregard of the rights of others. Thus, he held, the debt was for a willful and malicious injury and was not dis-chargeable under section 523(a)(6) of the Code.
 

 The district court reviewed the order of the bankruptcy judge de novo,
 
 [4]
 
 but also noted that its disposition would be the same even had it followed a clearly erroneous standard. The district court declined to review the bankruptcy judge’s finding that Minihan was legally drunk at the time of the accident, noting that its disposition of the statutory issue obviated the need to reach that question. The court then held that “willful injury”, under section 523(a)(6) of the Code, requires deliberate or intentional injury. The court found no suggestion that Minihan intentionally drove his car across the center line of the highway, or that he intended to engage in a collision with another vehicle. Concluding that Min-ihan’s conduct, at most, was in reckless disregard of the risks, the court held that the injuries inflicted were not willful or malicious and, thus, the debt was dis-chargeable in bankruptcy.
 

 Our review of this issue begins, as it must, with the language of the Code. Section 523(a)(6) of the Code states:
 

 (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
 

 ******
 

 
 *343
 
 (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.
 

 The Code does not define “willful and malicious.” Before passage of the Bankruptcy Reform Act of 1978, most courts followed the approach established in
 
 Tinker v. Colwell,
 
 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1903), a criminal conversation case in which the Supreme Court held that under the 1898 Bankruptcy Act:
 
 [5]
 

 * * * [A] willful disregard of what one knows to be his duty, an act which is against good morals, an act likely to cause injury, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception.
 

 Id.
 
 at 487, 24 S.Ct. at 509.
 

 The
 
 Tinker
 
 interpretation of “willful and malicious injury” prevailed until passage of the Bankruptcy Reform Act of 1978. Congress retained unaltered the “willful and malicious injury” language of the 1898 Act in section 523(a)(6) of the 1978 Code. However, the House Judiciary Committee’s report accompanying the bill stated: “ ‘willful’ means deliberate or intentional. To the extent that
 
 Tinker v. Colwell,
 
 * * * held that a looser standard is intended, and to the extent that other cases have relied on
 
 Tinker
 
 to apply a ‘reckless disregard’ standard, they are overruled.” H.R.Rep. No. 595, 95th Cong. 2d Sess. 365,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News, 5787, 5963, 6320-21.
 

 In cases under section 523(a)(6), the prevailing view holds that debts arising from drunk-driving liability are dischargeable absent a showing that the debtor acted with intent to inflict injury. For example, in
 
 In Re Compos,
 
 768 F.2d 1155, 1158 (10th Cir. 1985), the Tenth Circuit held that section 523(a)(6) exempts from discharge intentional injuries, not liability resulting from intentional acts which lead to injury. Under this standard the court concluded, drunk-driving liability is not per se nondischargeable.
 
 See also In re Hostetler,
 
 44 B.R. 886, 888 (M.D.Fla.1984) (in the absence of a specific intent to injure the creditor, a drunk-driving debt may not be declared nondischargeable under section 523(a)(6));
 
 In re Granberg,
 
 39 B.R. 687, 689 (N.D.Ill.1984) (liability for injuries resulting from driving while intoxicated will only be non-dischargeable under section 523(a)(6) if the surrounding circumstances are so egregious as to show intent to injure);
 
 In re Kuepper,
 
 36 B.R. 680, 682 (E.D.Wis.1983) (under stricter standard of 1978 Code, actual intent to injure must be shown);
 
 In re Morgan,
 
 22 B.R. 38, 39 (D.Neb.1982) (intentional consumption of alcohol does not render drunk-driving injury intentional per se).
 

 There is, however, a substantial body of authority holding that debts arising from liability incurred in drunk-driving accidents ordinarily are not dischargeable. The principles on which these courts rely, however, vary. For example, in
 
 In re Adams,
 
 761 F.2d 1422, 1426 (9th Cir.1985), the Ninth Circuit Court of Appeals held that the 1984 amendment to the Code, which expressly declares that drunk-driving debts are non-dischargeable, clarified the 1978 Congress’ intent that such debts not be discharged.
 
 Compare In re Callaway,
 
 41 B.R. 341, 346 (E.D.Pa.1984) (the voluntary acts of drinking and then driving in an intoxicated state is sufficiently intentional and deliberate to render drunk-driving liability nondischargeable);
 
 In re Galvan,
 
 39 B.R. 663, 665 (D.Colo.1984) (the report of the Judiciary Committee is insufficient to overrule the
 
 Tinker
 
 interpretation of “willful and malicious injury,” especially in light of the fact that in the 1978 amendment to the Code Congress did not amend the language of this exception);
 
 In re Carey,
 
 35 B.R. 894, 898 (E.D.Tenn.1983) (the policy of the Code indicates that Congress did not intend discharge of drunk driving debts).
 

 We believe that the report of the Committee on the Judiciary persuasively
 
 *344
 
 indicates congressional intent to allow discharge of liability for injuries unless the debtor intentionally inflicted an injury.
 
 See Garcia v. United States,
 
 469 U.S. 70, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984) (“the authoritative source for finding the legislature’s intent lies in the committee reports on the bill, which ‘represent] the considered and collective understanding of those congressmen involved in drafting and studying proposed legislation.’”) (citations omitted).
 
 See also Miller v. Federal Mine Safety & Health Review Commission,
 
 687 F.2d 194, 195 (7th Cir. (1982) (in the absence of any contrary legislative history, a clear statement in the principal committee report is powerful evidence of legislative purpose).
 

 In support of his claim, Cassidy points to the 1984 amendment to the Code, expressly declaring that drunk driving debts are non-dischargeable. 11 U.S.C. § 523(a)(9) (West Supp.1984). Acknowledging that this amendment applies only prospectively and therefore does not govern this case,
 
 [6]
 
 Cassi-dy maintains that passage of section 523(a)(9) clearly indicates that the 1978 Congress never intended to make drunk-driving debts dischargeable.
 

 In statutory interpretation, the intent of a later Congress is not determinative of the intent of a previous Congress.
 
 International Brotherhood of Teamsters v. United States,
 
 431 U.S. 324, 354 n. 39, 97 S.Ct. 1843, 1864 n. 39, 52 L.Ed.2d 396 (1977). As the district court correctly noted, it is the intent of the 95th Congress which drafted the Code, not the 98th Congress, which controls.
 
 Cassidy v. Minihan,
 
 52 B.R. 947, 951 (W.D.Mo.1985). Further, the legislative history of the 1984 amendment to the Code is at best ambiguous regarding whether the 98th Congress acted to clarify the intent of the previous Congress or to close a perceived loophole in the Code as it existed.
 
 [7]
 
 Senator DeConcini, the proponent of the amendment stated, in introduction:
 

 * * * I have an amendment that would
 
 change the standard
 
 and would not permit discharge in bankruptcy of obligations arising from the infliction of willful, wanton, or reckless injury. Today there exists in the bankruptcy statute an unconscionable loophole which makes it possible for drunk drivers or others who have acted with willful, wanton, or reckless conduct and who have injured, killed, or caused property damage to others to escape civil liability for their actions by having their judgment debt discharged in Federal bankruptcy court. This loophole affords opportunity for scandalous abuse * * *
 

 Cong.Rec.S. 5326 (daily ed. Apr. 27, 1983) (statement of Sen. DeConcini) (emphasis added). Finally, we find it particularly significant that the proposed amendment became section 523(a)(9) of the Code and created a new exception to discharge: it did not amend section 523(a)(6) of the Code.
 

 We conclude that by section 523(a)(6) of the Code, the 95th Congress intended to bar the discharge of intentionally inflicted injuries. We agree with the district court’s assessment that there is no evidence that Minihan intended to cause injury to anyone. Minihan’s conduct reflected, at most, reckless disregard for the risks involved. We therefore conclude that Minihan’s debt is dischargeable under section 523(a)(6).
 

 
 *345
 
 For the foregoing reasons we affirm the district court’s judgment.
 

 [1]
 

 . The Honorable Scott O. Wright, Chief Judge, United States District Court for the Western District of Missouri.
 

 [2]
 

 . The court based its conclusion on the fact that the results of a blood alcohol test conducted in the hospital four hours after the collision showed a .076 blood alcohol level. The court took judicial notice of the rate at which alcohol metabolizes in the blood, and concluded that at the time of the accident, Minihan’s blood-alcohol level would have well exceeded ten-hundredths of one percent, the amount necessary for legal intoxication in Missouri. Mo.Stat.Ann. § 577.012(1) (Vernon Supp.1984).
 

 [3]
 

 . The bankruptcy judge held that the issue whether liability was based on Minihan's infliction of a willful and malicious injury was not actually litigated in the state court proceedings and, therefore, that collateral estoppel did not bar litigation of that issue in the bankruptcy proceedings.
 
 In re Minihan,
 
 slip op. at 6.
 

 [4]
 

 . The court exercised jurisdiction under its Emergency Resolution, adopted following
 
 Northern Pipeline Construction Co. v. Marathon Pipeline Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) to provide for administration of the bankruptcy system.
 
 See
 
 Emergency Rule D.
 

 [5]
 

 .
 
 Tinker
 
 interpreted section 17(a)(2) of the Bankruptcy Act of 1898. That provision was redesignated section 17(a)(8) by the 1970 amendment of the former Act, but is otherwise unchanged from the 1898 Act.
 

 [6]
 

 . Section 553(a) of the Bankruptcy Amendments and Federal Judgeship Act of 1984 provides that the amendments to 11 U.S.C. § 523(a) shall become effective 90 days after enactment of the Act. This case is not within that time period.
 

 [7]
 

 . We are aware of the Ninth Circuit’s contrary view expressed in
 
 In re Adams.
 
 That court concluded that the subsequent amendment to the Code, especially in light of the existing division among the authorities, should be viewed as an attempt to clarify the intent of the 1978 Congress. We decline, however, to follow that approach, which essentially renders section 523(a)(9) retroactively applicable. Section 523(a)(9) added a new exception to discharge, it did not amend the provision which is here in dispute. While a broader reading of section 523(a)(6) may to some yield a salutary outcome in cases dealing with drunk-driving, we must defer to the intent of the Congress drafting section 523(a)(6) and accord it a narrow interpretation.