In re Alberto Obed MIERA, Jr., Debtor.

Neil K. JOHNSON, Plaintiff,

v.

Alberto Obed MIERA, Jr., Defendant.

Bankruptcy No. 3–88–1897.
Adv. No. 3–88–180.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Aug. 8, 1989.

---

**152**

Michael C. Black, Black Law Office, Ltd., St. Paul, Minn., for plaintiff.

Ronald J. Walsh, Levy & Miller, Minneapolis, Minn., for defendant.

Molly T. Shields, St. Paul, Minn., Chapter 7 Trustee.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding for determination of dischargeability of debt came on before the Court on February 27, 1989, for hearing on Plaintiff's motion for summary judgment. Plaintiff appeared by his attorney, Michael C. Black. Defendant appeared by his attorney, Ronald J. Walsh. Chapter 7 Trustee Molly T. Shields appeared *pro se*. Upon the moving and responsive documents, record made at hearing, and the other files and records in this adversary proceeding, the Court grants Plaintiff's motion and determines that a portion of Defendant's debt to Plaintiff is nondischargeable in bankruptcy.

## FINDINGS OF FACT

Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code in this Court on June 13, 1988. At all relevant times, he was a judge of the Minnesota State District Court for the Second Judicial District, Ramsey County. Plaintiff was his court reporter during two terms of employment in 1984–5 and 1985–6.

After the end of his second term of employment with Defendant, Plaintiff sued Defendant, Ramsey County, and the State of Minnesota in the state courts, requesting an award of damages for battery and for employment discrimination (the latter

under a sexual harassment theory). In his complaint, Plaintiff alleged that Defendant had kissed him on the lips on an occasion in mid-December, 1984, and had made other unsolicited and unwanted sexual overtures to him. Plaintiff prayed for awards of general, special, and punitive damages against Defendant in an amount in excess of $50,000.00.[1] Defendant answered and counterclaimed, denying the allegations of battery and sexual harassment, and requesting an award of damages for defamation.

After a change of venue, the lawsuit was tried before a jury in Minnesota State District Court for the Tenth Judicial District, Wright County, in March, 1987.[2] The trial was lengthy, and involved a great deal of expert and non-expert testimony going to the respective parties' truth and veracity.

After the close of evidence, the state trial judge instructed the jury at length about the nature of the parties' respective common-law tort claims, the use which the jury should make of the special verdict form, and the burden of proof which both parties bore as to their respective claims. On the issue of Plaintiff's claim for battery, the trial court instructed the jury:

> To establish his civil battery claim, Neil Johnson must show, by the greater weight of the evidence, an intentional and unpermitted contact by Alberto Miera upon the person of Neil Johnson. The claimed battery in this case is the kiss.

*Johnson v. State of Minnesota, et al,* File No. C–4–87–346, Tr. of Trial at 2663 (Minn. D.Ct., 10th J.D.). On the question of Plaintiff's prayer for punitive damages, the court instructed:

> If you find by clear and convincing evidence that the acts of Defendant Miera show a willful indifference to the rights of Neil Johnson, then you may, in addition to other damages to which you find

Mr. Johnson entitled, award Mr. Johnson an amount which will serve to punish Defendant Miera and deter others from the commission of like acts.

> When I say clear and convincing evidence, I mean that the evidence must lead you to conclude that it is highly probable that Defendant Miera acted with willful indifference to the rights of others. Put another way, the evidence must produce in your minds a firm belief or conviction that Defendant Miera acted with willful indifference to the rights of others.

> When I say that Alberto Miera must have acted with willful indifference to the rights of others, I mean that Alberto Miera must have acted with a deliberate lack of concern for the rights of others.

*Johnson v. State of Minnesota, et al.,* File No. C4–87–346, Tr. of Trial at 2665–2666 (Minn.D.Ct., 10th J.D.).

The jury returned a verdict for Plaintiff on his battery count, awarding him $50,000.00 in damages through the date of the verdict; $25,000.00 for future damages; and $300,000.00 in punitive damages. The jury's awards were supported by affirmative answers to special interrogatories going to the factual questions of whether Defendant kissed Plaintiff without his consent; whether the kiss was a direct cause of any harm to Plaintiff; and whether Defendant's act showed a willful indifference to Plaintiff's rights. Via a May 27, 1987 order entered on its own motion, the trial court ordered a remittitur of $250,000.00 on the punitive damage award, reducing it to the sum of $50,000.00. In Findings of Fact, Conclusions of Law, and an Order for Judgment entered on June 4, 1987, the trial court reduced the award for future damages to a present value of $22,589.60, and ordered entry of judgment against Defen-

---

1. He also prayed for awards of general, special, and punitive damages and attorney fees against the governmental defendants under the Minnesota state employment discrimination statutes. The disposition of these prayers for relief is not relevant here.

2. The two counts of the complaint were jointly tried, though only the battery count was submitted to the jury. The trial judge disposed of the employment discrimination count by separate findings and order. Plaintiff bases his dischargeability complaint on the battery count and judgment alone.

dant in the total sum of $122,589.60, plus costs and disbursements.

Defendant appealed the judgment. Plaintiff filed a notice of review on the trial court's remittitur of the punitive damage award. The Minnesota Court of Appeals affirmed the trial court's judgment in all respects. *Johnson v. Ramsey County*, 424 N.W.2d 800 (Minn.App.1988). On August 24, 1988, the Minnesota Supreme Court denied review of the decision of the Court of Appeals. 424 N.W.2d at 800.

On the basis of Plaintiff's allegations in the state-court litigation and certain other allegations, the Minnesota Board on Judicial Standards filed a formal complaint against Defendant on August 31, 1987. It alleged that Defendant had violated certain of the Canons of Judicial Conduct and the Rules of the Minnesota Board on Judicial Standards. The Minnesota Supreme Court appointed a panel of three retired state district court judges to hear evidence, to make findings of fact, and to recommend disciplinary sanctions if appropriate. In Findings and Recommendations entered on January 7, 1988, the panel found that the Board on Judicial Standards had proven by clear and convincing evidence that Defendant had kissed Plaintiff on the lips without warning or consent. After further proceedings on the panel's findings, the Minnesota Supreme Court held that "... there is clear and convincing evidence to support the panel's findings regarding the incidents involving Judge Miera and Neil Johnson." *In re Miera*, 426 N.W.2d 850, 854 (Minn. 1988).[3]

## DISCUSSION

### I. *Summary of Substantive and Procedural Law.*

Plaintiff has moved for summary judgment on his request for determination of dischargeability of debt. He argues that he is entitled to judgment as a matter of law, determining that the debt evidenced by the state-court judgment is the result of a "willful and malicious injury" inflicted upon him by Defendant and, therefore, is excepted from discharge in bankruptcy[4] by operation of 11 U.S.C. § 523(a)(6). Defendant opposes the motion and argues that he is entitled to a trial on a number of factual matters.

### A. Substantive Test for Nondischargeability.

Plaintiff requests a determination that Defendant's debt to him is nondischargeable in bankruptcy by operation of the following language of 11 U.S.C. § 523(a)(6):

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity ...

■ A battery—that is, the unlawful touching of another which is without justification or excuse[5]—is a quintessential "injury" within the meaning of this provision. To support a determination of nondischargeability, however, the Bankruptcy Court must also find that the debtor inflicted the injury with both a "willful" and a "malicious" state of mind. "Willfulness" is demonstrated by evidence that the debtor committed the act intentionally and deliberately, rather than negligently or inadvertently. *In re Long*, 774 F.2d 875, 881 (8th Cir.1985); *In re Nelson*, 67 B.R. 491, 497 (Bankr.D.Minn.1985); *In re Burgstaler*, 58 B.R. 508, 515 (Bankr.D.Minn.1986); *In re Egan*, 52 B.R. 501, 506 (Bankr.D. Minn.1985).

■ "Malice" is a separate and distinct element of nondischargeability under § 523(a)(6). The plaintiff must demonstrate its existence by evidence beyond that

---

3. The Court went on to find that the incidents involving Plaintiff constituted judicial misconduct, and imposed certain sanctions. 426 N.W.2d at 856 and 859.

4. This Court has not yet granted Defendant a Chapter 7 discharge, as the Trustee of his bank-

ruptcy estate has commenced an adversary proceeding objecting to his discharge under 11 U.S.C. § 727(a)(2)(A). That adversary proceeding is still pending.

5. *Black's Law Dictionary* at 105 (5th ed. 1979).

which would support a finding of "willfulness." *In re Long*, 774 F.2d at 880–81 ("... malice and willfulness are two different characteristics. They should not be lumped together to create an amorphous standard to prevent discharge for any conduct that may be judicially considered to be deplorable.") "[A] heightened level of culpability must be found, going beyond recklessness ..." *Id.* at 881. *See also Cassidy v. Minihan*, 794 F.2d 340, 343 (8th Cir. 1986). The Court must find in essence that the debtor intended to cause injury to the complaining creditor. *Cassidy v. Minihan*, 794 F.2d at 343–44.

■ Malice in the § 523(a)(6) sense is seldom capable of direct proof, whether through a direct expression by the debtor or otherwise. *In re Long*, 774 F.2d at 881. The courts may use circumstantial evidence of the debtor's state of mind to determine the existence of malice. "[T]he likelihood of harm in an objective sense may be considered in evaluating intent." *Id.*

### B. Standards for Summary Judgment.

To advance this motion under BANKR.R. 7056, Plaintiff argues that the various proceedings in the Minnesota state courts settled all of the fact issues which this adversary proceeding otherwise would have involved. He then argues that he is entitled to a judgment of nondischargeability on the basis of those settled facts.

BANKR.R. 7056 incorporates FED.R. CIV.P. 56, and makes it applicable to this adversary proceeding. Upon a motion for summary judgment, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R. CIV.P. 56(c).

To be sure, the federal courts have held repeatedly that summary judgment is a harsh remedy, one which a trial court should not grant unless the movant has established his right to judgment with indisputable clarity and has established that

the respondent is not entitled to relief under any discernible circumstances. *See, e.g., Bradsher v. Missouri Pacific R.R.*, 679 F.2d 1253 (8th Cir.1982); *Keys v. Lutheran Family & Children's Serv. of Mo.*, 668 F.2d 356 (8th Cir.1981); *Nathanson v. United States*, 630 F.2d 1260 (8th Cir.1980). More recently, however, the Supreme Court has reaffirmed that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole ..." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also Aetna Life Ins. Co. v. Great Nat'l Corp.*, 818 F.2d 19, 20 (8th Cir.1987).

■ Thus, in a case where the defendant does not plead affirmative defenses, where the plaintiff moves for summary judgment and musters clear evidence which fully supports its claim, the defendant must come forward with specific evidence which controverts the plaintiff's factual assertions and establishes the existence of triable fact questions on the issues of liability and/or damages. If the defendant fails to demonstrate a triable controversy in this fashion, the plaintiff is entitled to determination of its case on the record as made, and will prevail if it shows it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322–24, 106 S.Ct. at 2552–53. The non-moving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or ... otherwise ..., must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *In re Anderson*, 72 B.R. 783, 789 (Bankr.D.Minn. 1987); *In re Bowen*, 89 B.R. 800, 803 at n. 4 (Bankr.D.Minn.1988). When a lawsuit is ripe for summary adjudication, a court should not hesitate to grant the motion. *Ceco Corp. v. United States*, 554 F.Supp. 569, 571 (D.Minn.1982).

### II. Analysis of Plaintiff's Motion.

To prevail on his motion for summary judgment, Plaintiff must first demonstrate that there is no factual dispute as to any element of his claim for nondischargeabili-

ty. He must then show that the applicable statutory and caselaw precedent entitles him to judgment in his favor upon the facts so acknowledged.[6]

A. Genuine Issue of Material Fact?

Plaintiff bases his motion upon the facts as found by the Minnesota state courts in his own lawsuit and in the judicial disciplinary proceedings. He argues that the doctrine of collateral estoppel precludes Defendant from relitigating any of the factual issues decided in state court, and that the findings underlying the civil judgment and disciplinary order mandate judgment in his favor on the federal-law dischargeability issue presented here.

In *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Supreme Court held that the doctrine of *res judicata* does not prohibit the litigation of fraud-related fact issues between a debtor and his creditor in dischargeability proceedings in a bankruptcy case, notwithstanding the existence of a prior state-court judgment which established the debtor's civil liability on the underlying debt. In a footnote, however, the Supreme Court suggested that the "narrow principle of collateral estoppel" might preclude relitigation of factual or legal issues in a dischargeability proceeding. The Supreme Court noted that collateral estoppel

> treats ... as final only *those questions actually and necessarily decided in a prior suit.* [citations omitted] If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of [the applicable bankruptcy-law provision], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

*Brown v. Felsen,* 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10 (emphasis added). The District Court for this District has held that the Bankruptcy Court may apply collateral estoppel in dischargeability proceedings, in an appropriate case. *Schwartz v. Renville Farmers Co-op Credit Union,* 44 B.R. 266, 268 (D.Minn.1984). Collateral estoppel will preclude the relitigation of questions of either fact or law, as long as the proponent meets the prerequisites for its application to the given question. *See, e.g.,* RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982).

■ The party invoking collateral estoppel to preclude the relitigation of issues must demonstrate:

1. The issue sought to be precluded must be the same as that involved in the prior action;

2. The issue must have been actually litigated;

3. The issue must have been determined by a valid and final judgment;

4. The determination of the issue must have been essential to the final judgment.

*Schwartz v. Renville Farmers Co-op Credit Union,* 44 B.R. at 268; *In re LaCasse,* 28 B.R. 214, 216 (Bankr.D.Minn.1983); *In re Carothers,* 22 B.R. 114, 119 (Bankr.D. Minn.1982). As will be seen, in the context of the present motion, some of these elements are properly considered in the factual stage of summary judgment analysis, and others are considered in the legal inquiry.

■ The proponent of collateral estoppel need not have been a party to the action resulting in the prior judgment or order, so long as its opponent was a party to the prior litigation, and so long as the opponent was given a full and fair opportunity to be heard in the prior litigation. *State of Michigan v. Morton Salt Co.,* 259 F.Supp. 35, 65–66 (D.Minn.1966), *aff'd sub nom. Hardy Salt Co. v. State of Illinois,* 377 F.2d 768 (8th Cir.1967); *Victoria Highway Village, Inc. v. Weaver,* 480 F.Supp. 71, 74 (D.Minn. 1979).

■ One significant limitation on the application of collateral estoppel to factual

---

**6.** While Defendant's answer contains several paragraphs denominated "affirmative defenses," the allegations in them only bolster his denials of various elements of Plaintiff's dischargeability claim. They do not plead true affirmative defenses on which Defendant would bear a burden of proof at trial.

determinations is the requirement that the evidentiary standard of proof in the earlier action must be the same as that to be applied in the later action. *Schwartz v. Renville Farmers Co-op Credit Union*, 44 B.R. at 268–69; *In re Hauser*, 72 B.R. 165, 167 (Bankr.D.Minn.1985).

To establish a nondischargeable debt in this adversary proceeding, Plaintiff must prove all of the elements of § 523(a)(6) by clear and convincing evidence. This is a standard of proof more rigorous than the preponderance-of-the-evidence standard generally applied in civil actions. *See, e.g., In re Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987) (applying 11 U.S.C. § 523(a)(2)(A)); *Schwartz v. Renville Farmers Co-op Credit Union*, 44 B.R. at 269 (applying 11 U.S.C. § 523(a)(2)(B)); *In re Burgstaler*, 58 B.R. at 512 (applying §§ 523(a)(2)(B) and (a)(6)); *In re Nelson*, 67 B.R. at 496 (applying § 523(a)(6)); *In re Pommerer*, 10 B.R. 935, 938 (Bankr.D.Minn.1981) (applying §§ 523(a)(2)(B) and (a)(6)). To successfully invoke collateral estoppel, then, Plaintiff must establish from the records made in the state courts that the fact-finders in those proceedings specifically concluded that the evidence supporting each of the proffered findings was of clear and convincing weight. Section 523(a)(6) establishes three separate factual elements—the battery itself, willfulness, and malice—so scrutiny of the state-court record must treat each element in turn.

The record in Plaintiff's tort litigation does *not* show that the jury found by clear and convincing evidence that Defendant had committed a battery upon Plaintiff. The trial judge properly instructed the jury that to establish liability Plaintiff need have proven the battery by a preponderance of the evidence. The only proper conclusion from the combination of this instruction and the ensuing verdict is that the jury applied the lesser standard of proof in finding that the alleged battery had taken place.[7]

However, the Minnesota Supreme Court concisely and unequivocally found that clear and convincing evidence supported the disciplinary panel's finding that Defendant had committed the battery upon Plaintiff. It reached this conclusion after giving some deference to the disciplinary panel's assessment of credibility, but nonetheless making an independent review of the evidence presented. 426 N.W.2d at 854. Then, in imposing discipline, it essentially adopted the panel's finding as its own. *Id. See* MINN.R.BD. ON JUD.STAND. 13(f).

The Supreme Court implicitly concluded that Defendant had acted intentionally in kissing Plaintiff. There is no indication that the record in either proceeding contained any evidence that the contact was inadvertent, accidental, or negligent. Defendant does not argue that there was such evidence. The only inference to be drawn from the Supreme Court's summary of Defendant's actions was that the battery was deliberate and intentional, and that the Supreme Court thought the conclusion so obvious that it did not merit comment.

Finally, the state courts in the tort action—starting with the trial jury, all the way to the Minnesota Supreme Court—concluded that there was clear and convincing evidence that Defendant had acted with a deliberate lack of concern for Plaintiff's rights. The jury made this conclusion after hearing evidence that Plaintiff had made sexual overtures to Defendant for close to one year, and that Plaintiff had repeatedly rebuffed those advances. *See* 424 N.W.2d at 802–03. Plaintiff had a right to be free of unsolicited and unwanted intrusions on his person. His suit on a cause of action in battery was an attempt to redress a violation of that right. The evidence of the remark which Defendant made

---

7. Plaintiff's counsel argues that the jury "implicitly found" clear and convincing evidence of the basic fact of the battery, because it found clear and convincing evidence of Defendant's willful indifference to Plaintiff's rights to support its award of punitive damages. Only by an act of judicial legerdemain could one credit this argument. It would convert what was unquestionably a two-step fact-finding process under the trial judge's instructions to a melded, conclusory process—without an iota of support from the state-court trial record.

immediately after the kiss [8] unquestionably played a major role in the jury's finding that Defendant had acted with deliberate indifference to Plaintiff's rights. On appeal, Defendant did not challenge the sufficiency of the evidence to meet the clear-and-convincing standard, so the trial jury's conclusion as to sufficiency stands on its own right for dischargeability purposes.

■ Defendant is now estopped from denying the facts established by these two sets of findings. During the course of the two state-court proceedings, the various parties fully and exhaustively litigated the issue of whether the battery occurred, and the issue of Defendant's contemporaneous state of mind. These issues were determined by valid and final judgments, affirmed by the highest court of the state of Minnesota.[9] The determination of these issues was essential to the final judgments in both proceedings. It goes without saying that the jury's findings on willful indifference were necessary to support the award of punitive damages—and, indeed, they were the sole discernible basis for it. *See* MINN.STAT. § 549.20 subd. 1. After the trial court's remittitur, the punitive-damage award survived challenge on appeal. 424 N.W.2d at 806–08. The Minnesota Supreme Court based its imposition of disciplinary sanctions exclusively on Defendant's actions toward Plaintiff, and most saliently upon the act of the kiss.[10]

This satisfies only three of the four prerequisites for application of collateral estoppel, however. Because there are substantive differences between the bases for liability under state tort law and bankruptcy dischargeability law, though, application of the first requirement—the identity of issues—is more a question of law than of fact.

### B. Entitlement to Judgment as a Matter of Law?

Defendant is collaterally estopped from denying the existence of two out of the three elements of a nondischargeable debt under § 523(a)(6)—the "injury by the debtor to another entity," accompanied by a "willful" state of mind. There is no cognizable difference between the state-law character of these two concepts and their bankruptcy-law variant. This conclusion is not as straightforward as to the third element, the debtor's "malice."

■ Since the enactment of the Bankruptcy Code of 1978, the federal courts have labored at great length to define and illuminate the nature of this sort of "malice." *See, e.g., discussion in In re Long,* 774 F.2d at 879–82; *Cassidy v. Minihan,* 794 F.2d at 342–44; *In re Egan,* 52 B.R. at 506–08. Proof sufficient to satisfy state-law tests for the intent element of analogous torts may not always satisfy federal-law tests for nondischargeability of debt. *See, e.g., Schwartz v. Renville*

---

8. The evidence was that Defendant kissed Plaintiff immediately after Plaintiff protested that "he just wanted to do his job and did not want to clash anymore." Plaintiff testified that Defendant said "Oh, we clashed!" after he had kissed Plaintiff. 424 N.W.2d at 803.

9. Defendant has argued that the Minnesota Supreme Court's disciplinary order did not constitute a "valid and final judgment" for collateral estoppel purposes. The Supreme Court was empowered to enter a judgment based on its written opinion, MINN.R.BD. ON JUD.STAND. 13(f), and undoubtedly did so. Admittedly, the disciplinary order and judgment did not accord relief of the same nature as a standard civil or criminal judgment. Nonetheless, it accorded final relief after an adversary process, and substantially and decisively affected Defendant's status. It was thus a "final judgment," to be given collateral effect as appropriate. To be consistent with constitutional due process requirements, a procedure with consequences as crucial as a judicial disciplinary proceeding should culminate in nothing other than a formal fact-finding process and a structured and rational according of relief, which would be given the finality of any other important judicial decision. The Minnesota state judicial disciplinary process is structured to do so, and achieved that result here. As such, for preclusive purposes it was indistinguishable in all material respects from any civil judgment in equity.

10. Though the Board on Judicial Standards made its original complaint on the basis of a number of other allegations of misconduct, the disciplinary panel or the Supreme Court either found those allegations unsupported by the requisite quantum of evidence, 426 N.W.2d at 852 n. 2, or that, though proven, they did not constitute judicial misconduct, *Id.* and 426 N.W.2d at 856–57.

*Farmers Co-op Credit Union,* 44 B.R. at 268; *In re Hauser,* 72 B.R. at 166–67; *In re Carothers,* 22 B.R. at 119–20; *In re Pommerer,* 10 B.R. at 938–39. When collateral ·estoppel is invoked in dischargeability proceedings, the Bankruptcy Court must carefully compare the state-law theory of culpability underlying the collateral judgment, with the more exacting and specific intent requirements of bankruptcy law. *Schwartz v. Renville Farmers Co-op Credit Union,* 44 B.R. at 268–69. This exercise is more difficult and generally less certain of result when the collateral judgment was made on the basis of a jury verdict which did not use special interrogatories, and upon a rule of law which allowed the imposition of liability on any of several alternative findings as to intent. *See Schwartz v. Renville Farmers Co-op Credit Union; In re Carothers.* If the state court did use special interrogatories which were sufficiently precise, the exercise is simpler. In the present matter, the state court did use special interrogatories of some precision, which the jury answered in the affirmative. This focuses the inquiry on whether the jury's factual findings supporting its punitive damage award then satisfy the "malice" requirement of § 523(a)(6).

They do. Under *In re Long,* malice in the § 523(a)(6) sense may be evidenced by conduct which is "targeted at the creditor ..., at least in the sense that the conduct is certain or almost certain to cause ... harm." 774 F.2d at 881. The act, therefore, may by its very nature bespeak the "intent to cause harm" that constitutes malice under § 523(a)(6). The jury specifically found that the nature of Defendant's act showed a willful indifference to Plaintiff's rights, equated to a deliberate lack of concern for those rights. The evidence in the civil lawsuit was that Plaintiff had to repeatedly fend off Defendant's advances, all to no avail until after the incident of the

kiss. Plaintiff had made it clear to Defendant that he did not share Defendant's attraction, and would not acquiesce to his requests for further intimacy. Defendant, as a lawyer and judge, was constructively on notice of Plaintiff's right to be free from such solicitation, and from unwanted bodily contact. As a participant, he was actually on notice of Plaintiff's wishes. The potential harm to Plaintiff—physical and emotional distress, embarrassment, psychological trauma, the need for counseling—was quite obvious; and, to an extent sufficient to sustain the damage award on appeal, Plaintiff proved that that harm did occur. *See* 424 N.W.2d at 804–05. The evidence indicates that, despite all this, Defendant persisted—and, as a result, he was found civilly liable in battery. Under the unique circumstances which were found by the Minnesota state courts, Defendant's "willful indifference to Plaintiff's rights" under state law is the full and effective equivalent of malice in the § 523(a)(6) sense.[11]

Because the state courts found the equivalent of malice in the § 523(a)(6) sense by clear and convincing evidence, Defendant is collaterally estopped from denying the existence of the final element under that section. Having demonstrated incontrovertible facts, and shown that those facts satisfy the bankruptcy-law test, Plaintiff is entitled to a judgment of nondischargeability of debt.[12]

### III. Scope and Amount of Nondischargeable Debt.

■ This conclusion does not end this Court's inquiry, however. Even though neither party addressed the issue, the structure of the jury's damage award raises the question of whether the full amount of that award is properly excepted from

---

11. Because the jury specifically found "willfulness"—that is, awareness and deliberation in the act—the disregard for Plaintiff's rights is properly equated with malice. The jury found something more than mere "recklessness"—the heedless failure to even consider others' rights. This distinguishes the present case from *Cassidy v. Minihan. See* 794 F.2d at 343.

12. Plaintiff has requested entry of another money judgment against Defendant. As his state-court judgment will remain unaffected by bankruptcy to the extent adjudged herein, it will be fully enforceable to that extent. This Court need not duplicate money judgments unnecessarily, and will not.

discharge in bankruptcy under 11 U.S.C. § 523(a)(6).

After the post-trial reductions by the trial judge, Plaintiff's judgment had two major components—an award of actual damages in the sum of $72,589.60, and an award of punitive damages in the sum of $50,000.00. The award of actual damages is a debt directly attributable to the willful and malicious injury found to have been inflicted by Defendant on Plaintiff. That debt perforce is excepted from discharge.[13]

■■■ However, under Minnesota state law an award of punitive damages is punitive and not compensatory. Punitive damages are granted to punish the liable party for his wrongful act, and to deter him and others from the commission of similar acts; they bear no relationship to the actual harm suffered by the plaintiff. *Johnson v. Ramsey County*, 424 N.W.2d at 806–07; DUNNELL'S MINN.DIG.2d, *Damages* § 5.00.a. (3d ed. rev. 1982), and cases cited therein. Punitive damages are a penalty or sanction, the amount of which is not commensurate to the monetary value of the harm suffered by the injured party. *Id.* As such, an award of them does not fall within the ambit of debts nondischargeable under § 523(a)(6). *In re Schmidt*, 36 B.R. 834, 836–37 (Bankr.D.Minn.1984). *See also In re McDonald*, 73 B.R. 877, 882 (Bankr. N.D.Tex.1987); *In re Church*, 69 B.R. 425, 434–35 (Bankr.N.D.Tex.1987); *In re Brown*, 66 B.R. 13, 16 (Bankr.D.Utah 1986); *In re Cheatham*, 44 B.R. 4, 8 (Bankr.N.D.Ala. 1984).

This conclusion is buttressed by policy considerations. In the absence of specific statutory direction, excepting a civil obligation which has a purely punitive function from discharge in bankruptcy would contravene the "fresh start" goals of bankruptcy relief. *In re Schmidt*, 36 B.R. at 836–7. Thus, the debt excepted from discharge by this Court's judgment will be limited to Plaintiff's entitlement to actual damages from Defendant.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1. That Plaintiff's motion for summary judgment is granted to the extent set forth in Terms 2 and 3 of this Order, and is denied in all other respects.

2. That Defendant's debt to Plaintiff, as evidenced by a judgment entered in Minnesota State District Court for the Tenth Judicial District, Wright County, on or after June 4, 1987, in favor of Plaintiff and against Defendant, is excepted from discharge in bankruptcy by operation of 11 U.S.C. § 523(a)(6), to the extent of $72,-589.60, together with the interest which has accrued on that amount pursuant to Minnesota statute since the date of entry of judgment, and together with all costs and disbursements taxed on that judgment pursuant to statute.

3. That the remainder of Defendant's debt to Plaintiff which is evidenced by the judgment described in Term 2 hereof is dischargeable in bankruptcy.

LET JUDGMENT BE ENTERED IN ACCORDANCE WITH TERMS 2 AND 3 OF THIS ORDER.

---

**13.** The ancillary award of litigation costs and disbursements inured to Plaintiff under state law by virtue of his status as prevailing party; as such, it too is nondischargeable.