In re James Lee HARTLEY, d/b/a Shade Tree Auto Parts & Tire Service, Debtor.

Ricky D. JONES, Plaintiff,

v.

James HARTLEY, d/b/a Shade Tree Auto Parts and Tire Service, Defendant.

Bankruptcy No. 86–04817–2.
Adv. No. 87–0059–3–2.

United States Bankruptcy Court, W.D. Missouri.

June 24, 1987.

Julia J. Borel, Kansas City, Mo., for plaintiff.

Keith P. Krueger, Kansas City, Mo., for defendant.

MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

This adversary action under § 523 to determine dischargeability was brought by

Ricky D. Jones, hereinafter plaintiff, against James Lee Hartley, hereinafter defendant. Plaintiff sought to have his claim for damages which is pending in the Circuit Court of Jackson County, Missouri, against defendant and two other parties declared nondischargeable under § 523(a)(6) as a "willful and malicious injury by the debtor to another entity", i.e., the plaintiff.

Defendant had been a partner with one Robert G. Oldham in a business called "Shade Tree Auto Parts and Tire Service". That business was located in a shop at 12th & Jackson in Kansas City, Missouri. Plaintiff became an employee of that business in early October of 1985. Some ten days to two weeks after he began his employment, plaintiff was in the basement of the shop cleaning and painting used tires as directed by defendant. Plaintiff was using a solution of gasoline and tire black, supplied by the employer, to perform this operation. There were neither windows nor exhaust fans in the basement and the only ventilation came by means of the stairwell from the shop floor down to the basement.

After plaintiff had been down in the basement performing this task for an hour or so, defendant lit a firecracker and tossed it down the stairwell at the plaintiff. Defendant testified that he had no animus against the plaintiff, had tossed firecrackers at other employees over the years and had other employees toss firecrackers at him over the years. Defendant did admit that he himself had cleaned and painted used tires in the basement; knew of the resulting buildup of gasoline fumes in the basement attendant to such activity; knew the potential fire and explosive consequences of throwing a lighted firecracker into such an atmosphere; but meant only to startle or scare the plaintiff and characterized his act as "horseplay". Admittedly, the described events conjure up, to a macabre or weird sense of humor, a potentially amusing sequence, except that instead of frightening the plaintiff, defendant's "horseplay" severely injured plaintiff and thus substituted the masque of tragedy for the masque of humor.

After the explosion, plaintiff emerged from the basement with burns on 29% of his body. He was taken to the Kansas University Hospital Burn Center. Some $40,000.00 later, not to mention the pain and suffering endured, plaintiff was discharged with readily discernible scars to his face, neck and arms as well as other parts of his body. He filed suit against defendant, defendant's partner Oldham, and the landlord of the building. Shade Tree ceased business in February of 1986. Defendant filed his Chapter 7 bankruptcy on November 3, 1986. His estimated potential liability to plaintiff constituted 97% of his listed obligations. His secured debts total only $15,993.16 and his unsecured debts, other than the liability to plaintiff, total $14,655.00. He and his wife (who did not join him in bankruptcy) take home roughly $2,000.00 per month. All secured debts were reaffirmed. Obviously this bankruptcy was filed to eliminate the liability to plaintiff, and for no other purpose.

With that brief synopsis of the background, the Court now reaches the basic question: Is plaintiff's claim dischargeable? In considering that question the Court is highly cognizant of the extremely heavy burden that the Eighth Circuit has placed on proponents of § 523(a)(6) claims. See *In re Long*, 774 F.2d 875 (8th Cir.1985) and *Cassidy v. Minihan*, 794 F.2d 340 (8th Cir.1986). However, this Court is not at all sure that the interpretation urged by defendant's counsel is as broad as he proposes. It is defendant's contention that since there is no evidence indicating a deliberate intent to cause injury to the plaintiff, and defendant's acts were merely intended to "startle" or "surprise" or "scare" the plaintiff, the fact that plaintiff received serious injuries is merely regrettable not nondischargeable. Further that the consequences of any act of any bankrupt—however reckless or injurious—can be discharged unless actual intent to cause physical harm to the victim coupled with the deliberate doing of the act that causes injury can be adduced.

For reasons that will be discussed herein, the Court disagrees with defendant's contentions and conclusions. Defendant, of

course, places heavy emphasis on *In re Long,* Ibid, and *Cassidy v. Minihan,* Ibid. Hopefully, a careful analysis of what those cases actually hold will be helpful. In *Long* the Eighth Circuit very thoroughly traced the requisites of a § 523(a)(6) claim (from *Tinker* [*v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754] through the Congressional Reports) to arrive at a guideline which this Court hopes it is following. That guideline is the Restatement (Second) of Torts, § 8A, Comment b, which establishes intentional harm (including the qualification that the expected harm must be "certain or substantially certain" to occur) as the bright line rule for definition of willful and malicious. As the 8th Circuit observes:

"While intentional harm may be very difficult to establish, the likelihood of harm in an objective sense may be considered in evaluating intent". l.c., pg. 881

Applying these guideposts to the instant facts what was the "likelihood of harm" in throwing a lighted firecracker into a confined, and almost unventilated area where gasoline fumes were known to be present? The answer is obvious and defendant admitted he knew of the possible consequences, the present dangers, and the potential hazards of his acts. His only excuse was that he did not intend for the gasoline to explode or burn the plaintiff. Such sanguine hopes and lack of appreciation for the almost inevitable results of his deliberate act cannot avoid the malicious requisite so displayed. If defendant is correct in his analysis then only if a tort is committed while the perpetrator proclaims his desire to occasion injury to the victim may § 523(a)(6) come into play. This is not the lesson of *Long* and this Court in applying the standards set up by the Eighth Circuit therein concludes that both elements of willful and malicious were separately—not jointly—established and that defendant's conduct was far more culpable than the reckless disregard standard, and in fact meets the test of intentional harm.

Likewise, when the holding in *Cassidy v. Minihan,* Ibid, is examined, it is clear that once again the Eighth Circuit was applying legal standards to carry out the intent of Congress. The Court, in its attempt to make clear its rationale reiterates the same point in two different fashions as to what Congress intended. At page 343 the Court stated:

"We believe that the report of the Committee on the Judiciary persuasively indicates congressional intent to allow discharge of liability for injuries unless the debtor intentionally inflicted an injury."

At page 344 the Court stated:

"We conclude that by Section 523(a)(6) of the Code, the 95th Congress intended to bar the discharge of intentionally inflicted injuries."

Because *Minihan,* Ibid. provides no guidelines as to how a court may distinguish between an "intentionally inflicted injury" and an injury that is caused by reckless disregard, the court must go back to an analysis of *Long* to determine if § 523(a)(6) blocks dischargeability. The result of that analysis has already been shown.

There is another reason that defendant's arguments must fail. Conceding for the moment that defendant had no intent to cause burns on 29% of plaintiff's body, what did defendant intend when he lit and threw the firecracker at plaintiff? He intended to assault him! We all know the legal definition of assault and certainly the throwing of a lit firecracker (or probably an unlit firecracker) at anyone is an assault, whether that person be in a gasoline fume atmosphere or out in the open. If the act puts the victim in fear of his bodily safety, it is theoretically as much an assault even though no physical harm results. While the roots of human fear of sudden and unexpected loud noises probably goes back to an ancient and only psychically recalled instinct that same presaged an immediate attack by a sabertoothed tiger or some other equally dangerous hunter of humans, the particular fear of firecrackers is probably instilled by parental warnings, admonitions and threats of the consequences of exploding firecrackers that accompanied each of our childhood celebrations of Independence Day. Be that as it

may, each of us still experiences the same increased adrenal flow, the same acceleration of heart beat, and the same sudden jump in blood pressure from the explosion of an unexpected firecracker, as we do from any life threatening force. Our physical response is the same, and momentarily our mental response is the same.

In this case, the defendant intended to assault the plaintiff. He intended to "scare" or "startle" him. He intended the mental and physical injury, caused by fear of injury. The only thing he did not intend was the severity of the injury that followed. It matters not that defendant intended only to cause an instant of fright, rather than lifelong scarring and disability, once he intended to cause harm and set in motion the means to do so, he became responsible for all of the foreseeable consequences of his deliberate act.

The final reason that this Court concludes plaintiff's claim against defendant is not dischargeable is probably more philosophical than legal. Basically, certain acts, no matter how intentioned, are too dangerous and too harmful to ever be discharged in bankruptcy. Our social fabric requires certain limits and constraints on each one of us who constitute the woof and warp of that fabric. Without those limits and those constraints we become a true anarchy. Mr. Justice Holmes perhaps expressed it best when he said "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic." *Schenck v. United States*, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919). Although it is only distantly analogous, the absolute danger of harm to others by an act of a debtor should be a consideration by the Court in ruling § 523(a)(6) questions.

For all of the foregoing reasons, plaintiff's claim against the defendant is ruled NON–DISCHARGEABLE. Plaintiff is granted permission to pursue his state court litigation against this defendant (and the other party defendants) in the presently pending state court action.

This Opinion shall constitute Findings of Fact and Conclusions of Law as required by Rule 7052, Rules of Bankruptcy.