**In the Matter of James Lee HARTLEY, Debtor.**

**James Lee HARTLEY, Appellant,**

v.

**Rickey D. JONES, Appellee.**

**Bankruptcy No. 87–0059–3–2.**

**No. 87–0761–CV–W–6.**

United States District Court, W.D. Missouri, W.D.

April 28, 1988.

**478**

Keith R. Krueger, Kansas City, Mo., for appellant.

Julia J. Borel, Kansas City, Mo., for appellee.

## MEMORANDUM AND ORDER

SACHS, District Judge.

Debtor James L. Hartley was co-owner of Shade Tree Auto Parts & Tire Service, located in Kansas City, Missouri. As part of that business, employees of Shade Tree refurbished old tires for resale, a process performed in the basement of the business premises which involved cleaning and "painting" the tires with a rag soaked in a mixture of gasoline and tire black. Debtor had performed this chore himself and was aware of the gasoline and paint fumes which accumulated in the basement at such times. Rick D. Jones and Bill Crago were employees of Shade Tree on October 11, 1984. On that date, Bill Crago was asked to work on the used tires in the basement. After he had been in the basement for a short time, Crago emerged complaining of the fumes and announcing that he could not work in the basement because of the "smell." Jones volunteered to take his place. After he had been working in the basement for one to two hours, his clothing and shoes were splashed with gasoline. Jones testified that the fumes in the basement, which could be smelled upstairs in the first floor of the business, were "unbearable" and that he had to emerge from time to time to "get some air." Tires which had been rolled down the basement stairs for the renewal process had stacked up at the foot of the stairs, blocking the only exit from the basement of which

Jones, a relatively new employee, was aware at the time. It is undisputed that Hartley, aware of all the foregoing facts, intentionally threw a lighted firecracker into the basement as a joke on Jones. Hartley testified that such "jokes" were commonplace and that firecrackers had been thrown into the basement at him and at others "maybe a hundred" times over the years. On October 11, 1984, for the first time, sufficient fumes had gathered in the basement to create the explosion and fire which severely injured Ricky Jones. He incurred medical bills of $40,000 as well as psychological and permanent physical impairments and disfiguration as a result. Jones filed a civil suit against Hartley in Jackson County Circuit Court on January 25, 1985. Hartley subsequently filed a petition in bankruptcy, seeking to discharge his debt to Jones, who disputed the discharge in proceedings before the bankruptcy court on May 14, 1987. Jones argued that his claim arose from a "willful and malicious" injury by debtor, and was thus barred from discharge by 11 U.S.C. § 523(a)(6). Judge Koger denied discharge, finding that

> [debtor's] only excuse was that he did not intend for the gasoline to explode or burn the plaintiff. Such inevitable results of his deliberate act cannot avoid the malicious requisite so displayed. If defendant is correct in his analysis then only if a tort is committed while the perpetrator proclaims his desire to occasion injury to the victim may § 523(a)(6) come into play. This is not the lesson of *Long* and this court in applying the standards set up by the Eighth Circuit therein concludes that both elements of willful and malicious were separately … established and that defendant's conduct was far more culpable than the reckless disregard standard, and in fact meets the test of intentional harm.

75 B.R. 165 (1987).

Debtor has requested review of the denial by this court.

This court reviews the bankruptcy court's findings of fact under a clearly erroneous standard. Bankruptcy Rule

8013. Its conclusions of law are subject to de novo review by this court. *Matter of Newcomb*, 744 F.2d 621, 625 (8th Cir.1984).

There is no dispute over the fact that Hartley's act of throwing the firecracker into the basement was intentional. The sole issue for determination, therefore, is whether the injury was malicious within the meaning of § 523(a)(6). This statute has been construed on two recent occasions by the Eighth Circuit Court of Appeals. In *Cassidy v. Minihan*, 794 F.2d 340 (1986), the court held that the statute prohibited discharge of debts arising only from intentional injuries, as opposed to those resulting from wanton or reckless conduct. Although the panel deciding *Cassidy* did not make reference to it, this was the same result reached earlier by a different panel of that court in *In re Long*, 774 F.2d 875 (1985). In *Long*, it was held that conduct which was "targeted at the creditor ... at least in the sense that the conduct is certain or almost certain to cause financial harm" is malicious and warrants denial of a debt's dischargeability. While rejecting a standard which would result in denial of discharge of debts resulting from acts done in reckless disregard of a creditor's rights, the court considered the chosen standard to satisfy the complaints of secured creditors faced with the "almost impossible obstacles in asserting nondischargeability because of actual malice." Acknowledging the difficulty of proving intentional harm, the court held that "the likelihood of harm in an objective sense may be considered in evaluating intent."

Thus, while intentional harm remains the standard for malicious injury under § 523(a)(6) in this circuit, courts are not bound to the nearly impossible task of determining the subjective intent of the debtor at the time of his actions which gave rise to the debt. Rather, they are referred to the standard of intent as set out in Restatement (Second) of Torts, § 8A, according to which an act is intentional when

the actor desires to cause consequences of his act, or ... he believes that the consequences are substantially certain to result from it.

The comments to that section reveal a decreasing scale of responsibility. "As the probability that the consequences will follow decreases" so does the level of culpability, so that an action taken with less than substantial certainty of the results will be characterized as wanton or reckless, negligent, or mere happenstance depending upon the degree of their likelihood at the time of the action.[1]

While the Restatement (Second) might be interpreted to mean, as debtor argues, that a finding of intent requires that the actor subjectively believe the harmful consequences will follow, the cases on which the *Long* court relied did not so require. In *Hanke v. Global Van Lines, Inc.*, 533 F.2d 396 (8th Cir.1976), the court, citing Restatement (Second) of Torts § 8A, ruled that the likelihood of plaintiff's emotional distress was substantially certain and that defendant had therefore intended the harm. Similarly, in *Bogard v. Cook*, 586 F.2d 399, 412 (5th Cir.1978), *cert. denied*, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979), the court interpreted the "malicious intent prong of the official immunity defense to require proof that an official either actually intended to do harm to the plaintiff, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result." These cases reveal the principle that "where *a reasonable man in the defendant's position* would believe that a particular result was substantially certain to follow, he will be dealt with ... as though he had intended it." W. Prosser, *Law of Torts* 32 (4th ed. 1971) (emphasis added). Absolute certainty is not required, but an awareness which is substantially, i.e. "largely, but not wholly" certain, as that term is defined in *Web-*

---

1. "If the manifest probability of harm is very great, and the harm follows, we say that it is done maliciously or intentionally; if not so great, but still considerable, we say that the harm is done negligently; if there is no appar-

ent danger, we call it mischance." Holmes, *Privilege, Malice and Intent*, 1894, 8 Harv.L.Rev. 1, quoted in W. Prosser, *Law of Torts* 32 n. 34 (4th Ed.1971).

ster's *New Collegiate Dictionary* 1153 (1979).

Applying this principle to the facts of this case, the court must agree that throwing a lighted firecracker into a room filled with gasoline and paint fumes is substantially certain to cause an explosion and that a reasonable man would recognize that fact. While debtor disclaims such awareness, based partly upon "about 100" instances in which an explosion did not occur, he admitted that he realized that gasoline fumes are flammable, that a firecracker creates heat when it explodes, and that heat causes gasoline fumes to explode. The fact that upon prior occasions the fumes had apparently not accumulated to the point of explosion does not obviate the fact that physical laws ensure such an explosion under appropriate conditions. Debtor will not be heard to say that, because he was unaware that those conditions existed on that day, he did not know the explosion would occur. All the indicators would have informed a reasonable man that the conditions were right for the tragedy that ensued: the fumes could be smelled upstairs; he himself had performed the job before and knew that fumes collected in the unventilated room and had reason to know that Jones' clothes would be splashed with gasoline; the first employee sent downstairs to do the job that day had refused to finish because of the overpowering fumes; and Ricky Jones had been in the basement using gasoline for at least one and perhaps closer to two hours when the explosion occurred. The fact that the previous firecrackers had not produced an explosion is a fortuity which could not have given debtor a reasonable expectation that physical laws had been suspended. There are circumstances under which the law will not excuse a "white heart and empty head"; this is one of those times. "[T]he defendant on a bicycle who rides down a man in full view on a sidewalk where there is ample room to pass may find the court unwilling to accept his statement that he did not mean to do it." Prosser, *supra*, at 32. The court agrees with the bankruptcy court that the debtor must be deemed to have intended the results of an action which, "although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result." *Bogard*, 586 F.2d at 412. Accordingly, it is

ORDERED that the bankruptcy court's denial of discharge of appellant's debt to appellee is hereby AFFIRMED.