**In re Duane Edward BRANDL, Debtor.**

**NORTH TEL, INC., Plaintiff,**

**v.**

**Duane Edward BRANDL, Defendant.**

**Bankruptcy No. 3–94–771.**
**Adv. No. 3–94–97.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

March 24, 1995.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding for determination of dischargeability of debt came on before the Court on December 6, 1994, for hearing on the Plaintiff's motion for summary judgment. The Plaintiff appeared by its attorney, Richard H. Bend. The Defendant appeared by his attorney, Jerome M. Rudawski. Upon the moving and responsive documents and the arguments of counsel, the Court grants the motion.

### NATURE OF PROCEEDING

The Defendant filed a voluntary petition for relief under Chapter 7 on February 17, 1994. The Plaintiff is the Defendant's former employer; it is also a scheduled creditor of his. Before the Defendant's bankruptcy filing, his debt to the Plaintiff was reduced to judgment, entered by default in the Minnesota State District Court for the Second Judicial District, Ramsey County. Through this adversary proceeding, the Plaintiff seeks a determination that the major portion of the debt is excepted from discharge in bankruptcy. Though the Plaintiff did not plead a specific provision of 11 U.S.C. § 523(a) in its complaint, it is clear from the nature of the complaint's fact allegations that the Plaintiff proceeds under 11 U.S.C. § 523(a)(6).[1]

### MOTION AT BAR

The Plaintiff now moves for summary judgment pursuant to FED.R.BANKR.P. 7056.[2] The theory of its motion is straightforward; it argues that the doctrine of collateral estop-

Jerome M. Rudawski, Roseville, MN, for defendant.

Richard H. Bend, St. Paul, MN, for plaintiff.

1. This statute provides an exception from discharge for any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity ..." Both sides have presented the issues on this motion as if the complaint had been formally pleaded under it.

2. This rule makes FED.R.CIV.P. 56 applicable to adversary proceedings in bankruptcy. In pertinent part, FED.R.CIV.P. 56(c) provides that, upon a motion for summary judgment,

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits [submitted in support of the motion], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

pel, or "issue preclusion," bars the Defendant from denying that certain facts were established for the purposes of this adversary proceeding when the default judgment was entered in its Ramsey County District Court lawsuit. The Plaintiff maintains that these established facts satisfy the elements of § 523(a)(6). Therefore, as the Plaintiff would have it, it is entitled to judgment "as a matter of law," determining that the major part of the debt evidenced by the judgment is excepted from the Defendant's discharge in bankruptcy.

The corollary propositions are obvious: if the judgment in the Ramsey County District Court lawsuit does not trigger collateral estoppel, the Plaintiff's motion must be denied.

## PROCEDURAL HISTORY

Given the Plaintiff's theory, the history and outcome of the Ramsey County District Court lawsuit are critical to the disposition of this motion, as are the form of the pleadings and the state court's disposition.

The Plaintiff initiated its lawsuit through the service of a summons and complaint that bear the date of June 29, 1993, on their face.[3] The complaint opened with allegations that the Plaintiff employed the Defendant as a bookkeeper and computer operator from March 5 through June 20, 1990 and that, as such, "[h]e was the primary person responsible for computer maintenance in the corporation." The Plaintiff also alleged that it stored its business records, data on its customers, and various other intellectual property on its computer systems.

The complaint incorporated five substantive counts, four sounding in tort and one sounding in contract. The Plaintiff pleaded the four tort counts so that each one cumulatively incorporated the fact allegations of previously-numbered counts. In the first three counts, the Plaintiff alleged that, on or about June 20, 1990, the Defendant had intentionally damaged and destroyed the business records that the Plaintiff had main-

tained on its computer hardware, by programming a "computer virus" onto the software that the Plaintiff had installed and maintained in the hardware equipment for the preservation and processing of the records.[4] The Plaintiff alleged that the operation of the virus had caused actual damage to the existing and prospective business relationships between the Plaintiff and its customers, by rendering data, analysis, and other intellectual property rights and services unavailable to the Plaintiff and by depriving the Plaintiff of the value of its "other inventory." These injuries, the Plaintiff claimed, had resulted in a substantial loss of business revenues to the Plaintiff.

The Plaintiff framed the first three counts under intentional-tort theories: intentional interference with business relations, intentional interference with prospective business advantage, and conversion. In every one of these counts, the Plaintiff specifically alleges that the Defendant acted intentionally in placing the virus, to interfere with the conduct of the Plaintiff's business.

The Plaintiff styled the fourth count under the theory of nuisance. The new wording of the fourth count does not contain any references to the Defendant's intent or state of mind, but the first paragraph in it incorporates all of the fact allegations in the previous counts.

In a fifth count, the Plaintiff alleged that the Defendant had given it a promissory note in the face amount of $550.00 in May, 1990, and that the Defendant still owed that sum to it.

In its prayer for relief, the Plaintiff sought judgment "for a reasonable sum in excess of ($50,000) Fifty Thousand Dollars," plus interest, costs, and disbursements. It itemized the components of this request as being $550.00 for the sum owing on the note; $11,-500.00 "in actual damages incurred by [the] Plaintiff in rebuilding and replacing its com-

---

3. The Defendant has not denied that he was properly served with this process.

4. The state-court complaint contains no allegations as to the nature and effect of the virus's operation. The complaint in this adversary pro-

ceeding contains a statement that it "caus[ed] the destruction of [the] Plaintiff's business records and caus[ed] satanic and sexually profane language to appear on the computer's screen."

puter files"; and compensatory damages "in excess of $50,000.00" for lost profits.

The Defendant did not timely serve an answer to the Plaintiff's complaint. In mid-August, 1993, the Plaintiff's counsel applied to the Ramsey County District Court for entry of a default judgment pursuant to MINN.R.CIV.P. 55.01.[5] To support the request, he submitted a combined affidavit of no answer, identification, non-military status, amount due and costs and disbursements, as well as a rather summary affidavit by one Jack Gohl, its president, going to the amount of its damages. In the "Amount Due" section of the former affidavit, counsel stated "there is now due by the Defendant to the Plaintiff on the debt set forth in the Complaint the sum of Twelve-thousand fifty ($12,050.00) dollars ..." In his affidavit, Gohl itemized this total as consisting of "actual damages in the amount of $11,500 in rebuilding and replacing computer files intentionally damaged by [the] Defendant," and the sum of $550.00, representing the unpaid face amount of the note.

Pursuant to the Plaintiff's counsel's application, the Court Administrator of the Ramsey County District Court made an entry on its default judgment roll in favor of the Plaintiff on August 20, 1993, in the total amount of $12,457.00. Judgment then was docketed in accordance on August 25, 1993. These entries were not supported by separate findings of fact and conclusions of law.

The Defendant has never taken an appeal from this judgment. Nor has he moved for relief from it pursuant to any applicable rule of the Minnesota Rules of Civil Procedure.

### DISCUSSION

The Plaintiff wishes to see that the debt reduced to judgment under Counts I through

IV of its state-court complaint survive the Defendant's discharge in bankruptcy, and remain fully enforceable against him personally.[6] As presented through this motion and the Defendant's response, this request for relief raises three issues.

### A. Governing Law

The Supreme Court has recognized that collateral estoppel does lie in proceedings for determination of dischargeability of debt under 11 U.S.C. § 523(a). *Grogan v. Garner,* 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991).

When a prior judgment rendered in a state court is the predicate for the invocation of one of the preclusion doctrines in an action before a federal court, 28 U.S.C. § 1738[7] requires the federal court to apply the law of the original state forum to determine the preclusive effect of the prior decision. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). Therefore,

> though the federal courts may look to the common law or to the policies supporting *res judicata* and collateral estoppel in asserting the preclusive effect of decisions of the federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.

*Allen v. McCurry,* 449 U.S. at 96, 101 S.Ct. at 415.[8] *See also Robi v. Five Platters, Inc.,* 838 F.2d 318, 322 (9th Cir.1988).

---

5. It is not clear whether the Plaintiff proceeded under color of MINN.R.CIV.P. 55.01(a), or MINN. R.CIV.P. 55.01(b).

6. It does not seek to have the Defendant's adjudicated liability under the promissory note excepted from discharge.

7. Known as the "full faith and credit statute," this law provides in pertinent part as follows:
   ... [J]udicial proceedings [of any court of any ... State] ... shall have the same full faith and

credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.

8. Recent decisions rendered within the Eighth Circuit—including some by the undersigned—have blurred this technical distinction when applying collateral estoppel in dischargeability proceedings. *See In re Miera,* 104 B.R. 150, 156 (Bankr.D.Minn.1989), *aff'd,* 926 F.2d 741, 743 (8th Cir.1991); *In re Gibson,* 149 B.R. 562, 568 (Bankr.D.Minn.1993); *In re Swan,* 156 B.R. 618,

Under Minnesota law,

collateral estoppel is available where (1) the issues are identical to those in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party in the previous action; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issues.

*Ellis v. Minneapolis Commission on Civil Rights*, 319 N.W.2d 702, 704 (Minn.1982); *Studer v. City of Coon Rapids*, 485 N.W.2d 712, 718 (Minn.Ct.App.1992), *rev. den.* (Minn. June 30, 1992). Expanding on one or more of these elements, the Minnesota courts have also noted that "collateral estoppel ... operates only as to matters actually litigated, determined by, *and essential to* a previous judgment." *Roseberg v. Steen*, 363 N.W.2d 102, 105 (Minn.Ct.App.1985) (emphasis added). *See also Sachs v. Jenista*, 296 Minn. 535, 537, 210 N.W.2d 45, 46–47 (1973) (proponent of collateral estoppel must establish "that the precise question was in fact presented and necessarily determined ..."); *Roberts v. Flanagan*, 410 N.W.2d 884, 886 (Minn.Ct.App.1987).[9]

### B. Elements of Collateral Estoppel in Controversy

█ In his responsive brief and argument, the Defendant's counsel identifies only two of the elements of collateral estoppel as being in controversy.[10]

#### 1. Identity of Issues/Essentiality of Findings

The extent of the Defendant's concessions on the basic facts is not particularly clear from the responsive memorandum submitted by his counsel.[11] The Defendant does not overtly deny that the software virus was introduced into the Plaintiff's computer programs during the course of the Defendant's employment.[12] However, he apparently denies that he introduced the virus with the "willfulness" and "malice" that are contemplated by § 523(a)(6). His counsel also maintains that, whatever the intent found by the Ramsey County District Court, it cannot be held to have been the same as that prescribed by the bankruptcy statute.

In this circuit, "willfulness" in the sense of § 523(a)(6) is defined as an act committed deliberately or intentionally—as opposed to negligently. *Werner v. Hofmann*, 5 F.3d 1170, 1172 (8th Cir.1993); *Cassidy v. Minahan*, 794 F.2d 340, 343 (8th Cir.1986); *In re Long*, 774 F.2d 875, 880 (8th Cir.1985); *In re Hanson*, 171 B.R. 869, 873–74 (Bankr. D.Minn.1994); *In re Nelson*, 67 B.R. 491, 497 (Bankr.D.Minn.1985); *In re Egan*, 52 B.R. 501, 506 (Bankr.D.Minn.1985).

The Eighth Circuit has cautioned that the separate element of "malice" implicates "a heightened level of culpability." *In re Long*, 774 F.2d at 881. The term must be "given a meaning more nearly coinciding with common usage," in the sense of a specific intent to inflict harm on the complaining creditor. *Id.* In passing on the existence of "malice" under § 523(a)(6), the courts are to take a page from the RESTATEMENT (SECOND) OF TORTS, § 8A. *Id.* That authority states that malice is evidenced where

622 (Bankr.D.Minn.1993). (On the other hand, *Lovell v. Mixon*, 719 F.2d 1373 (8th Cir.1983), does not embody the same error, because the prior adjudication in that case was from a federal court.)

9. As it turns out, these elements are virtually identical to those identified by the Eighth Circuit in *In re Miera*—*i.e.*, the identity of the fact issue in question, as between the two proceedings; the actuality of litigation of the subject issue in the prior proceeding; the validity and finality of the judgment in the prior proceeding; and the essentiality of the fact adjudication in question to the prior judgment. *See* 926 F.2d at 743.

10. The second and third elements are beyond dispute. The Ramsey County District Court judgment was a final one, on the merits of the

Plaintiff's claims under state law; the Defendant was a named party to the underlying action.

11. Counsel did not submit an affidavit by his client, and there is no verification for the factual averments in the memorandum.

12. Substantively, the Defendant would have been hard-pressed to deny this fact: the doctrine of *res judicata*, or "claim preclusion" now prohibits the Defendant from relitigating the threshold issue of his liability to the Plaintiff for the debt in question, even though the original judgment was rendered by default. *In re Sullivan*, 122 B.R. 720, 722 (Bankr.D.Minn.1991).

the actor desires to cause [the harmful] consequences of his act, or ... he believes that the consequences are substantially certain to result from it.

*See also In re Hartley,* 100 B.R. 477, 479 (W.D.Mo.1988), *aff'd,* 874 F.2d 1254 (8th Cir. 1989) (*en banc*) (applying RESTATEMENT test in detail).[13] The difficulty of proving such a subjective state of mind may be overcome by adducing evidence that "the expected harm [is] 'certain or substantially certain' to occur, and evidenced by conduct that is 'targeted at the creditor ... at least in the sense that the conduct is certain or almost certain to cause financial harm.'" *In re Long,* 774 F.2d at 881.

As the Plaintiff's counsel points out, the state-court complaint that he drafted contained allegations that the "Defendant intentionally altered and damaged the Plaintiff's computer, computer systems, computer network and computer software," ¶ 2, "with the intention of interfering with [the] Plaintiff's contractual relationships with its customers," ¶ 3, and "with the intent of causing the destruction of and harm to the Plaintiff's business relationship with its customers," ¶ 9. He also pled that the "Defendant intentionally and without claim of right deprived Plaintiff of the use and possession of the contents of its computer system," ¶ 13, and that his "conduct in placing a computer virus in [the] Plaintiff's computer constituted a nuisance," ¶ 17.

The elements of deliberateness in action and intent to cause harm are essential to all of the Plaintiff's state-law theories of recovery in tort, as his counsel pleaded them to support Counts I through IV of his client's complaint.

In the first place, "intent"—both in the sense of prior deliberation and as a specific wish to bring about a result harmful to the party acted upon—is an essential element of the "tortious interference" theories that underlay Counts I and II of the complaint.

*E.g., United Wild Rice, Inc. v. Nelson,* 313 N.W.2d 628, 632–33 (Minn.1982).

The other two counts are not as readily resolved on the defined elements of their theories of recovery. A specific intent to work harm is not an essential element of conversion; conversion is defined as a "*willful* interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession," but "the intent, knowledge, or motive of the converter is immaterial except as affecting damages." *Larson v. Archer–Daniels–Midland Co.,* 226 Minn. 315, 317, 32 N.W.2d 649, 650 (1948) (emphasis added). Nor is such a state of mind an essential element of "nuisance." *Highview North Apts. v. County of Ramsey,* 323 N.W.2d 65, 71 (Minn.1982) (noting that nuisance is broadly actionable for "intentional conduct, negligence, ultrahazardous activity, violation of a statute or some other tortious activity ..."). However, the Plaintiff's counsel pleaded in both of these counts that the Defendant *had* acted with such an intent, and he did not rely on proof of any lesser state of mind when he presented the action to the state court on a request for default judgment.

The state court's implicit findings on these pleaded facts, then, were anything but "incidentally or collaterally decided." *Cf. Anderson v. Mikel Drilling Co.,* 257 Minn. 487, 491, 102 N.W.2d 293, 297 (1960). Entirely to the contrary, they were "essential to the judgment" on the only theory of fact on which the Plaintiff had pleaded its cause of action, and then requested that judgment. As a simple comparison between the Eighth Circuit precedent and the fact averments in the Plaintiff's complaint will show, the core fact issues going to "willfulness" and "malice" within the meaning of § 523(a)(6) are identical to those actually raised and decided in the state-court litigation. The Plaintiff, then, has satisfied this element of collateral estoppel under Minnesota law.

---

**13.** In an earlier decision in the same case, a panel of the Eighth Circuit had reversed the lower courts' determination that the debt in question was nondischargeable. *In re Hartley,* 869 F.2d 394 (8th Cir.1989) (panel). The full court then granted the plaintiff-creditor's motion for rehearing *en banc,* thereby vacating the panel decision. Sitting *en banc,* the Eighth Circuit then divided evenly on the issue before it—leaving the District Court's judgment affirmed. 874 F.2d at 1254.

### 2. Full and Fair Opportunity to be Heard

The other issue on the elements of collateral estoppel springs from the mode by which the state court disposed of the prior litigation. The Defendant essentially argues that he still is "entitled to a day in court" in the context of this dischargeability proceeding, because he never really had one in the Ramsey County District Court. As he characterizes it, this last element of collateral estoppel requires that the earlier finding be the result of a contested trial before a finder of fact. Because the earlier lawsuit "went by default," he maintains, the question of his intent in placing the computer virus into the Plaintiff's systems was never put to this test and the resultant findings are not preclusive. Some courts have adopted this meaning, though without recognizing the dictate of the full faith and credit statute that state law be applied. *E.g., In re Raynor,* 922 F.2d 1146, 1149–50 (4th Cir.1991); *In re McMillan,* 579 F.2d 289, 292 (3d Cir.1978).

In Minnesota, a default judgment may be given full preclusive effect as to all issues pleaded in the underlying complaint, as long as the proponent satisfies all of the other elements of collateral estoppel as to those issues. *See Herreid v. Deaver,* 193 Minn. 618, 622, 259 N.W. 189, 191 (1935) (precluding defendant from relitigating fact issues essential to prior state court judgment rendered by default; as to those issues, such judgment "stands as an insurmountable bar to any attack upon its verity and effectiveness and as a final determination of the facts essential to its existence"); *Roberts v. Flanagan,* 410 N.W.2d at 886–87 (default judgment

precludes plaintiff that obtained it from relitigating fact issues settled for claims pleaded in earlier action).

This precedent is binding on this court, and its import is clear: though the Defendant did not interpose a defense in the Ramsey County District Court action, he had a "full and fair opportunity" to do so.[14] As contemplated by *Herreid* and *Roberts v. Flanagan,* he is now bound by all of the findings that must be deemed to have been made by the state court. Those findings, in turn, encompass all of the fact allegations pleaded there by the Plaintiff.[15]

The Plaintiff, then, has met the last element of collateral estoppel under the governing standard; it is fully entitled to rely on the fact adjudications that underlie the Ramsey County District Court judgment to demonstrate its right to a judgment of nondischargeability here.

### C. Availability of Equitable Estoppel as Defense

In his responsive memorandum, the Defendant's counsel raises an affirmative defense: as he would have it, the Plaintiff is equitably estopped from seeking to have this debt found nondischargeable, because of certain actions that it took when his employment was terminated. According to the Plaintiff, these actions[16] so prejudiced his own options in any subsequent litigation between him and the Plaintiff that the Plaintiff should now be barred from obtaining any sort of legal or equitable relief against him. This theory, however, does not provide a defense to the Plaintiff's motion.[17] There are two reasons.

---

14. This does not reach the issue of whether a default judgment can meet the "actually litigated" element of the federal test for collateral estoppel. Any pronouncement on that issue would be dictum.

15. This conclusion disposes of a troublesome issue raised by the undifferentiated form of the state court's order and judgment: under Minnesota law, a party against whom a default judgment was taken is barred from relitigating "issues *pleaded in* the [prior] complaint." *Roberts v. Flanagan,* 410 N.W.2d at 886–87 (emphasis added). As a result, it does not seem that the want of formal pre-judgment findings adopting those pleaded allegations will stymie the bar of collateral estoppel, so long as the allegations went to elements of the earlier claim.

16. Specifically, the Defendant alleges that, on the day he left its employ, the Plaintiff had required him to sign a "Separation Agreement and Release," which prohibited him from suing the Plaintiff on any claim that arose out of his employment.

17. Actually, counsel pleaded the theory in support of a motion by his client for summary judgment, which he had served and filed late in the afternoon on the day before the hearing on the Plaintiff's motion. This was untimely under the scheduling order that governed this litigation, so the Court denied the motion from the bench. As a concession to the Defendant, the Court reserved consideration of the defense to the extent that it was cognizable in the context of the Plaintiff's motion.

The first stems from the wording of Rule 56 itself, which requires that, to satisfy its particular burden of production on a motion for summary judgment, a party must bring forward the equivalent of *admissible evidence*—sworn discovery responses and affidavits under oath. The Defendant's counsel raised this argument as part of a responsive memorandum of law. This document includes several references to alleged acts and occurrences at the end of the Defendant's employment, and quotes the alleged agreement at length. However, it is not verified by the Defendant or by anyone else with testimonial capacity, and there is no separate supporting affidavit. In short, there is not one shred of evidence under oath on which findings could be made—whether on the threshold issue of the existence of the agreement, or on the Defendant's alleged reliance and the harm that would result were the Plaintiff allowed the strict enforcement of its legal rights.[18] The response is so out of compliance with its enabling rule that it simply cannot be granted.

The second reason goes more directly to the theory of the proffered defense, and its availability in the late context of this adversary proceeding.

In his brief, the Defendant's counsel argues that the "Plaintiff should be equitably estopped *from asserting the State Court judgment as a bar to discharge* given [the] Plaintiff's unconscionable advantage by asserting his [sic] strict legal rights." (emphasis added). This theory misses a central aspect of underlying defense. By its nature, equitable estoppel overrides a plaintiff's technical entitlement to relief on the merits on a claim or cause of action at law. The defense, however, is not prompted by *procedural* considerations; it was neither recognized nor structured to run as a defense to the application of collateral estoppel. If equitable estoppel lay at all here, it lay as to the merits *of the underlying debt liability*—not to derail a preclusion doctrine from application in the more removed context of dischargeability litigation in a later bankruptcy case.

Ultimately, however, the defense is not now available, either—because of *res judicata*, the other major preclusion doctrine. This doctrine is also known as "claim preclusion," or "merger or bar." *Hauser v. Mealey*, 263 N.W.2d 803, 806 (Minn.1978). It bars parties or their privies from litigating additional claims or defenses that arise out of a cause of action, once final judgment has been rendered in a suit based on the same set of factual circumstances. *Id.* at 807. *Res judicata* bars the assertion of all claims and defenses that were available to the parties in the original proceeding, regardless of whether the parties raised them there and regardless of whether the court actually decided them. *Youngstown Mines Corp. v. Prout*, 266 Minn. 450, 466, 124 N.W.2d 328, 340 (1963). *See also In re Johnson*, 13 B.R. 342, 346 (Bankr.D.Minn.1981).

This latter precept, of course, has a very pointed consequence for the theory of defense raised here. Equitable estoppel does not really go to whether this Court should apply collateral estoppel against the Defendant; rather, it went to whether the Plaintiff should have been allowed a judgment against him on its state-law claims in the first place. The Defendant did not raise the defense where it properly lay, however, so he is barred from raising it here and now—whether to attack the original judgment, or to avoid any collateral consequence of the adjudications on which it was based. Equitable estoppel simply cannot put blinders on this Court, insofar as that judgment is concerned.

### CONCLUSION

The Defendant is precluded from relitigating all issues going to his liability at law to the Plaintiff, including the equitable defense that he belatedly raises to try to avoid being subjected to the preclusion doctrines here. He is also precluded from relitigating the fact issues of his intent in the acts that brought about that liability. The facts, as settled by the Ramsey County District Court, satisfy the elements of a nondis-

---

**18.** For a summary of the elements of equitable estoppel under Minnesota law, *see Hydra–Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990) and *Transamerica Ins. Group v. Paul*, 267 N.W.2d 180 (Minn.1978). *See also In re Gibson,* 149 B.R. at 577; *In re Sunde,* 149 B.R. 552, 557– 58 (Bankr.D.Minn.1992); and *In re Johnson,* 139 B.R. 208, 218 (Bankr.D.Minn.1992).

chargeable debt under § 523(a)(6): when he put the computer virus on the Plaintiff's hardware, the Defendant acted both deliberately and with the goal of causing harm to the Plaintiff, and the Plaintiff suffered that harm as a result.

The Plaintiff, then, is entitled to a judgment determining that the debt in question survives as enforceable, notwithstanding the past grant of discharge in bankruptcy to the Defendant.

IT IS THEREFORE, ADJUDGED, AND DECREED that the Defendant's debt to the Plaintiff in the principal sum of $11,500.00, as fixed and liquidated by a judgment docketed on August 25, 1993, in the Minnesota State District Court for the Second Judicial District, Ramsey County, under the caption of *North Tel, Inc. v. Brandl,* Court File No. C8 93 959, together with all interest recoverable under law on the principal sum of that indebtedness, and together with any ancillary award of costs and disbursements, was excepted from the discharge in bankruptcy granted to the Defendant on May 17, 1994, in BKY 3–94–771, by operation of 11 U.S.C. § 523(a)(6).

LET JUDGMENT BE ENTERED ACCORDINGLY.