In re Gerard M. QUINN, Debtor.

Virginia VAUGHN, Plaintiff,

v.

Gerard M. QUINN, Defendant.

Bankruptcy No. 93–42402–172.
Adv. No. 93–4430–172.

United States Bankruptcy Court,
E.D. Missouri.
Eastern Division.

April 17, 1995.

Stuart J. Radloff, St. Louis, MO, for debtor/defendant.

Mark A. Bertsch, St. Louis, MO, for plaintiff.

## *MEMORANDUM*

JAMES J. BARTA, Bankruptcy Judge.

This matter is before the Court on a complaint by Virginia Vaughn ("Plaintiff") to determine dischargeability of certain debts that arose from a judgment entered against Gerard M. Quinn ("Debtor") by the St. Charles, Missouri, County Circuit Court. The Plaintiff has requested the debts be declared nondischargeable as based on allegedly willful and malicious actions of the Debtor, pursuant to 11 U.S.C. Section 523(a)(6). Following the denial of a Motion for Summary Judgment by this Court on August 9, 1994, a trial was conducted on April 4, 1995. The following determinations are based on the evidence presented at the trial and on consideration of the record as a whole.

This is a core proceeding pursuant to Section 157(b)(2)(I) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334, and Rule 29 of the Local Rules of the United States District Court for the Eastern District of Missouri.

On March 24, 1992, the Plaintiff filed a petition in the St. Charles County Circuit Court for Breach of Contract. The Debtor filed an answer on April 27, 1992. On the eve of the trial, the Circuit Court granted a request that Counsel for the Debtor be permitted to withdraw. On November 16, 1992, the Circuit Court conducted the trial of the matter. The Plaintiff appeared and presented evidence and oral argument; the debtor did not appear, although his attorney appeared and was again allowed to withdraw. The Circuit Court entered a judgment in favor of the Plaintiff on November 16, 1992 awarding the Plaintiff $24,000.00 for actual damages for breach of the construction contract and $24,000.00 for punitive damages. In its Order, the Court characterized the Debtor's actions as "wilful, wanton, and malicious" and further as "intentional, wilful, wanton and in reckless disregard of the safety and well being of the Plaintiff".

On April 28, 1993, the Debtor filed a Petition for Relief under Chapter 7 of the Bankruptcy Code.

In October, 1993, during the pendency of the Chapter 7 case, the Debtor filed a Motion in the State Circuit Court to Set Aside Default Judgment. The Circuit Court denied this motion on November 2, 1993. The Debtor has appealed neither the denial of that motion, nor the underlying judgment of the Circuit Court.

In her request for Summary Judgment, the Plaintiff argued that collateral estoppel should operate in this instance to preclude the Bankruptcy Court from conducting further proceedings on matters that had been litigated and ruled upon in the prior proceeding. In denying summary judgment, this Court concluded that the doctrine of collateral estoppel did not apply because the standard of malice under Section 523(a)(6) is not

the same as the standard involved in the state court proceeding and that the factual record before the Court did not support an independent finding of malice under Section 523(a)(6). *In re Quinn,* 170 B.R. 1013 (Bankr.E.D.Mo.1994).

Additional facts presented at the trial have supported the determination that the Defendant breached the contract with the Plaintiff: poor workmanship on the roof, low quality of paint, crawl space access door put in backwards, and certain plumbing work which may have resulted in a compression fitting failure that caused water damage in the almost completed addition and in the finished basement of the original structure. After the Debtor removed most of the water, the Plaintiff barred the Debtor from further work on the job although some items remained to be finished. However, based on the evidence presented at this trial, the Court finds that the job was substantially completed at the time of the plumbing incident and that the Plaintiff thereafter used the new kitchen and family room.

Testimony also established that during construction, when interim building inspections revealed code violations, the Debtor complied with the building inspector's requirements. No mechanic's liens were filed against the property. The Debtor used the cash advanced by Plaintiff under their contract for the material and labor expenses of the job. The Debtor attempted to mitigate the water damage caused by the plumbing failure and arranged and paid for the carpet drying. The Plaintiff testified that most of the damage was subsequently repaired by other contractors.

In the Order that denied the Plaintiff's request for summary judgement, this Court described the standards for dischargeability under Federal bankruptcy law, applied those standards to the record before the Court, and held that the record at that time did not support the conclusion that the Debtor's actions rose to the level of malice required to sustain a determination of nondischargeability under Section 523(a)(6). Upon consideration of the record as a whole, including the testimony at trial and the additional docu-

mentation and exhibits, this conclusion remains the same.

■ Debts for damages arising solely from a breach of contract are not excepted from discharge under Section 523(a)(6). Thus, the portion of the state court judgment based solely on the breach of contract claim is not excepted from discharge in this case. *See Quinn,* 170 B.R. at 1017. *In re Modicue,* 926 F.2d 452 (5th Cir.1991). In order to except the punitive damage portion of the judgment from discharge under Section 523(a)(6), the Court must find the Debtor acted both willfully and maliciously.

The Eighth Circuit gave meaning to the terms "willful and malicious" in Section 523(a)(6) in the context of security agreements in its ruling in *In re Long,* 774 F.2d 875 (8th Cir.1985). The term "willful" in Section 523(a)(6) means intentional. *Long,* 774 F.2d at 880. Therefore, for "malicious" to have a meaning independent of "willful" it must mean something other than an intentional act that causes injury. *Id.* The Eighth Circuit has defined malicious conduct under Section 523(a)(6) as being "more culpable than that which is in reckless disregard of creditors' economic interests and expectations, as distinguished from mere legal rights." *Long,* 774 F.2d at 881. Thus, the standard in the Eighth Circuit for a willful and malicious breach of a security agreement is "conduct that is 1) headstrong and knowing ("willful") and 2) targeted at the creditor ("malicious") at least in the sense that the conduct is certain or almost certain to cause financial harm." *Id.* This standard requires a level of blameworthiness that exceeds recklessness. *Quinn,* 170 B.R. at 1018.

The *Long* requirement that the action be "targeted at the creditor" was the standard applied by the Eighth Circuit to hold a damage judgment in a battery action nondischargeable. *In re Miera,* 926 F.2d 741, 744 (8th Cir.1991). The evidence established that the Debtor was "more than reckless" because he intended to cause harm to the Plaintiff and that the Debtor was certain or substantially certain the Plaintiff would be harmed by the action. *Id.*

In the matter before the Court, the Plaintiff cited *In re Geiger,* 172 B.R. 916 (Bankr.

E.D.Mo.1994), to support her position that the Debtor's actions should be characterized as willful and malicious. The Court in the *Geiger* case determined that the Debtor/physician's malpractice was so egregious as to be nondischargeable under Section 523(a)(6). The *Geiger* court noted that the Eighth Circuit has provided two interpretations of "willful and malicious" under Section 523(a)(6). As applied to liabilities arising in the context of security agreements there is a requirement that the Debtor have the specific intent to injure the creditor. *Long,* 774 F.2d at 881. However, in the context of personal injury liabilities, there is a less specific intent standard best characterized as conduct certain or almost certain to result in physical harm, even if no harm was intended. *Geiger,* 172 B.R. at 921 *citing In re Hartley,* 75 B.R. 165, 166 (Bankr.W.D.Mo.1987), *aff'd* 100 B.R. 477 (W.D.Mo.1988), *and rev'd* 869 F.2d 394 (8th Cir.1989), *and rev'd on reh'g* 874 F.2d 1254 (8th Cir.1989) (en banc).[1]

In *Geiger,* the Court found the malpractice claim to be more nearly analogous to the physical injury context of *Hartley* than the security agreement context of *Long.* Dr. Geiger's misdiagnosis of the original infection and his repeated errors during treatment resulted in the amputation of part of the patient's leg. The Court held that the doctor's care was so far below the standard level of care that it could be categorized as willful and malicious conduct for dischargeability purposes. *Geiger* 172 B.R. at 923.

The minimum acceptability standards set by building codes are not analogous to the standard level of care a physician is expected to deliver to a patient. A breach of contract claim is more analogous to the security agreement context of *Long* than the physical injury context of *Hartley.* Also, the facts in the current case bear little resemblance to the facts in *Geiger.* The Plaintiff here has suffered no physical injury. She testified that the damages caused by the water leak and other workmanship complaints have

been substantially repaired and that she is living in and using the addition the Debtor built onto her house. The Court, therefore, uses the analytical framework of *Long* in this case.

There is no dispute that the Debtor's actions, as building contractor for Plaintiff, were willful. Thus, the crux of this matter is whether the evidence will support the conclusion that Debtor intended to cause the harm, whether the Debtor was certain or substantially certain that the other party would be harmed by his action, or that the Debtor's conduct was targeted at the Plaintiff in the sense that his conduct was certain or almost certain to cause financial harm. *See Quinn,* 170 B.R. at 1019 *citing Miera,* 926 F.2d at 744.

There were no mechanic's liens filed against the Plaintiff's property and the Debtor used all cash advances from the Plaintiff for materials and labor on the job. Thus, there is no evidence that the Debtor harmed the Plaintiff by converting her property to his own use. When the plumbing fitting failed at 2:30 A.M., the Debtor did not remain indifferent to the Plaintiff's plight but attempted to mitigate the damage by personally helping with the clean up and arranging for the carpet to be dried. While the Debtor was on the job at other times, he apparently satisfied the building inspectors when code violations were noted.

In summary, no evidence was provided at the trial to change the Court's previous opinion that the Debtor's actions did not rise to the level of malice needed to sustain a determination that the punitive damage claim is nondischargeable under Section 523(a)(6). The Plaintiff's claim is based on a judgment for breach of a construction contract and is therefore dischargeable in a Chapter 7 proceeding. *Quinn,* 170 B.R. at 1019; *also see In re Magee,* 164 B.R. 530 (Bankr.S.D.Miss.

---

1. In *Hartley,* an employer told an employee to clean and paint some used tires in an unventilated basement with a mixture of gasoline and tire black. After the employee had been at the task about an hour, the employer tossed a lit firecracker into the fume filled basement causing an explosion that severely injured the employee. There was no evidence that the employer intended anything other than to startle, surprise, or scare the employee. Nevertheless, his actions were so certain to cause harm that the damage claim was nondischargeable.

1994); *In re Modicue,* 926 F.2d 452; *In re Keller,* 72 B.R. 599 (Bankr.M.D.Fla.1987).

